John W. Sterling, as Executor of Edwin S. Chapin, Deceased, Appellant, *v.* Albert K. Chapin, Individually and as Executor of Edwin S. Chapin, Deceased, Respondent.

1. Accounting — Indebtedness of Member of Firm to Copartnership. In an action brought by an executor for an accounting of the partnership affairs of a stock brokerage firm, which had been composed of the plaintiff's testator and his brother, the defendant, it appeared that shortly after the formation of the firm, the entire capital of which was furnished by the testator, the copartnership or the testator advanced a sum of money with which to purchase a seat upon the New York Stock Exchange for the defendant, who received and became the owner of it; that the defendant charged himself upon the books of the copartnership, in his own handwriting, with said sum in an account headed with his name and "New York Stock Exchange Seat," which account was carried upon the books until the dissolution of the firm, and in which the defendant each year, with the exception of the one ending when the copartnership was dissolved, was charged with interest upon the balance shown to be due from him; that several days before the original entry was thus made the testator executed a general release whereby he released the defendant from all claims and demands which "he" had "by reason of an advance of the sum * * * made * * * to enable him to purchase a membership in the New York Stock Exchange," and which release was delivered to and filed with the stock exchange; that it was, at that time, a rule or custom of the New York Stock Exchange that before a person could be elected to membership he must show that there were no outstanding claims against him, and where money to purchase the seat had been borrowed it was necessary to file with the exchange a release of the claim for the benefit of the other members thereof; that more than two and a half years thereafter the defendant wrote a letter to the testator, in which he expressly acknowledged his indebtedness for the amount of the purchase money for his seat; held that no question of fact was presented, but in the absence of evidence that the advance had ever been repaid, or that the release had ever been delivered to, seen or heard of by the defendant, such evidence leads to the conclusion, as matter of law, that the defendant became indebted to the copartnership for the moneys advanced, and that the indebtedness had never been discharged.

2. Same. A contention that the advance or loan was a transaction between defendant and the testator as individuals, and that it was not a copartnership affair, cannot be sustained by the mere form of the release, which was executed by the testator individually, since the fact that subsequently to the execution of the instrument the parties by an account with

items upon the copartnership books extending over seven or eight years expressly and continuously admitted that the copartnership advanced the money and that the defendant was indebted to the copartnership therefor is conclusive proof that the matter was a copartnership and not an individual transaction.

3. SAME — WHEN RELEASE DOES NOT CANCEL INDEBTEDNESS. It seems that, presumptively and in the absence of evidence showing the contrary, the money was advanced upon the date when it was charged on the copartnership books, and that, therefore, the release executed several days before such date and when the indebtedness did not exist could not have discharged the latter. But, independent of this, the delivery to and retention of the release by the stock exchange without, so far as appears, the defendant ever seeing or hearing or knowing of it, and without any proof of consideration or actual payment, taken in connection with the entries made and carried upon the copartnership books for years and the express acknowledgment by the defendant of his indebtedness, indicate that the release was executed simply for the limited purpose of complying with the rules of the exchange, and not with the intention of canceling the indebtedness, and, as matter of law, such facts are utterly inconsistent with and opposed to the idea of such cancellation.

*Sterling* v. *Chapin*, 111 App. Div. 912, reversed.

(Argued May 16, 1906; decided June 12, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 29, 1906, affirming a nominal judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John A. Garver* for appellant. The evidence being undisputed that the partnership paid out $30,110 for the benefit of the defendant and that the defendant subsequently made payments on account from time to time and charged himself with interest on the balances, it will be presumed that the indebtedness still continues. (*Cuyler* v. *Wallace*, 183 N. Y. 291.) The three essential elements of a valid gift are the intention of the donor to give, the actual delivery to the donee of the thing given, and the acceptance by the donee. (Thornton on Gifts, §§ 3, 70, 72; *Doty* v. *Wilson*, 47 N. Y. 580; *Young* v. *Young*, 80 N. Y. 422; *Jackson* v. *T. T. S. Ry. Co.*, 88

N. Y. 521; *Matter of Crawford,* 113 N. Y. 560; *Beaver* v. *Beaver,* 117 N. Y. 421; 137 N. Y. 59; *Curry* v. *Powers,* 70 N. Y. 212; *Matter of Bolin,* 136 N. Y. 177; *Wadd* v. *Hazelton,* 137 N. Y. 215, 219; *Gannon* v. *McGuire,* 160 N. Y. 476, 481.) There is no evidence of a delivery of the release to the defendant. (*Herrick* v. *Carman,* 10 Johns, 224; *Grierson* v. *Mason,* 60 N. Y. 394; *Matthews* v. *Sheehan,* 69 N. Y. 585; *March* v. *MacNair,* 99 N. Y. 174; *Schmittler* v. *Simon,* 114 N. Y. 176; *Ensign* v. *Ensign,* 125 N. Y. 655; *Thomas* v. *Scutt,* 127 N. Y. 133; *Baird* v. *Baird,* 145 N. Y. 659; *Blewitt* v. *Boorum,* 142 N. Y. 367; *Higgins* v. *Ridgway,* 153 N. Y. 130.)

*L. Laflin Kellogg* and *Alfred C. Petté* for respondent. There was ample evidence to support the finding that the balance of the account designated " A. K. Chapin Stock Exchange Seat," amounting to $37,078.80, had been fully released and discharged by a formal release under seal, which was in no way attacked on the ground of fraud or mistake. (*Kirchner* v. *N. H. S. M. Co.,* 135 N. Y. 182; *Szymanski* v. *Chapman,* 45 App. Div. 369.)

HISCOCK, J. This action was brought for a partnership accounting of the affairs of the stock brokerage firm of E. S. Chapin & Co., composed of Edwin S. Chapin, the plaintiff's testator, and his brother, the defendant. The Appellate Division by a divided vote has affirmed the action of the trial court in refusing to charge defendant with a balance of $37,078.80, shown by the partnership books to be due from him for the purchase price of a Stock Exchange seat, and the only questions involved upon this appeal arise with reference to such refusal to charge said defendant with this item.

After entry of the interlocutory judgment finding the copartnership between the parties and directing an accounting, such accounting was first had with the result of charging defendant with the item in question, and final judgment was entered in favor of the plaintiff for an amount including the

same.   The Appellate Division, however, reversed such judg-
ment by a divided vote, and upon the second and present
accounting the referee, and upon the entry of final judgment
the trial court, were necessarily controlled by such decision of
the Appellate Division and compelled to exclude said item.

It may be observed at the outset, as bearing upon the equi-
ties of this litigation, that the copartnership or the testator
concededly advanced about $30,000.00, exclusive of interest,
with which to purchase a seat upon the Stock Exchange for
the defendant; that said defendant received and became the
owner of said seat, and that there is not the slightest evidence
or claim that he has ever actually repaid said advance.   If the
judgment appealed from is to be affirmed, it must be on
account of a technical release for an expressed nominal con-
sideration, and without any evidence of a meritorious consid-
eration or discharge of the indebtedness.   It does not seem to
me that it should be so affirmed, and, of course, I do not lose
sight of the rule that its reversal involves the demonstration
that there are no findings of fact to sustain it, or else if there
are such findings, that there is no evidence to sustain them.

The following material facts appear without any dispute
whatever:

The partnership between testator and defendant was formed
in 1886 and continued until May 1, 1896, when it was dis-
solved by mutual consent.   The testator furnished the entire
capital.   January 20, 1887, the defendant, upon the books of
the copartnership was charged with $30,110 cash for a Stock
Exchange seat in an account which was headed " A. K.
Chapin, New York Stock Exchange Seat."   This account was
entered upon the copartnership books by the defendant him-
self and there is no dispute that the charge in terms relates
to the Stock Exchange seat in question.

At this time it was a rule or custom of the Stock Exchange
that before a person could be elected to membership he must
show that there were no outstanding claims against him, and
if he had borrowed the money with which to purchase his
seat it was necessary to file with the exchange a release of this

claim for the benefit of the other members of the exchange. It was the intention that a person should enter upon business as a member of the exchange without having any claim against him and that the person who had supplied money for the purchase of his seat could not make a claim against him to the exclusion of other creditors. January 6, 1887, the testator executed in form a general release whereby " for and in consideration of the sum of one dollar  *  *  *  paid by Albert K. Chapin," he released said Chapin generally from all claims and demands which he had or might have for any cause " and more particularly by reason of an advance of the sum of $29,000 made to the said Albert K. Chapin to enable him to purchase a membership in the New York Stock Exchange." This release appears to have been delivered to and filed with the Stock Exchange which produced it upon the trial of this action. There is not the slightest evidence that it was ever delivered to or ever seen or heard of by the defendant.

The above-mentioned account opened against defendant several days after the execution of the above purported release as above stated was carried upon the books of the copartnership to the time of its dissolution and in that account the defendant each year, exclusive of the one ending when the copartnership was dissolved, was charged with interest upon the balance shown to be due from him, and was credited with various payments, the balance at the date of the dissolution due from him being $37,078.80.

In addition to this, upon August 5, 1889, more than two years and a half after the execution of the purported release, the defendant wrote to his brother a letter, which reads as follows :

" DEAR BROTHER ED :

" Understanding that you are thinking of appointing me one of the Executors or Trustees under your will upon your decease, and being now indebted to you on account of the purchase money of my seat in the New York Stock Exchange, I do most cheerfully hereby agree to act as such executor or trustee or both under your will if so appointed thereby with-

out any commission or compensation other than a release by your will or otherwise from so much of my said indebtedness as would equal the commission or compensation to which I should otherwise be entitled.

"Yours affectionately,

"A. K. CHAPIN."

It is urged that the testator at some time made statements which indicated that he had forgiven or intended to forgive this indebtedness, and that the defendant should not be held thereupon. The record, however, absolutely fails to disclose any such testimony outside of a certain letter or statement which was excluded from the evidence and is not before us for consideration.

It seems to me that this evidence presents no question of fact, but fairly and reasonably leads to the conclusion as matter of law that the defendant became indebted to the copartnership composed of his brother and himself for moneys advanced for the purchase of this Stock Exchange seat, and that this indebtedness has never been discharged. Perhaps I can best state the reasons which lead me to this opinion by discussing the propositions upon which the respondent bases his claim to a contrary judgment.

In the first place it is contended that the advance or loan was a transaction between defendant and the testator as individuals, and that it was not a copartnership transaction, and this contention is supported by a finding of the learned referee to the effect "that the sum of $30,078.80 appearing on the books as 'A. K. Chapin Stock Exchange Seat' represented moneys advanced by the plaintiff's testator." This contention is based solely upon the form of the release above quoted, which is executed by the testator individually, and refers to an advance of money for the purchase of the seat. In view of the fact that the testator supplied the entire copartnership capital, out of which must have been advanced the money for this purchase if a copartnership transaction, it would not have been strange or conclusive against plaintiff's claim if in a release not having that point in mind he had definitely recited

that the advance was made by himself.    But this he did not
do.    The release was by him of any claims which "he" might
have "by reason of an advance of the sum of $29,000 made
to the said Albert K. Chapin to enable him to purchase a
membership in the New York Stock Exchange."    While it is
very likely that a release by a copartnership would have been
strictly more appropriate to cover a copartnership transaction,
still there cannot be the slightest doubt that this instrument
in the form adopted answered the requirements of the Stock
Exchange and would have estopped and prevented the testa-
tor from ever urging against its members his rights either as
an individual or as a partner on account of the advance.    The
recital is "of an advance" with no particulars added whether
made by the individual or by the copartnership.    It seems to
me, therefore, that this piece of evidence standing by itself
and without any other testimony explaining or elucidating it
would be quite colorless and indecisive upon the question of
the authorship of the loan.    But when we consider the fact
that subsequently to the execution of this instrument the
parties by an account with items extending over seven or
eight years expressly and continuously admitted that the
copartnership advanced the money with which to purchase
this seat and that the defendant was indebted to such copart-
nership for such advance, all uncertainty vanishes and we
have proof which is conclusive upon this appeal that the mat-
ter was a copartnership and not an individual transaction.
This account and these entries represented the last and delib-
erate agreement of the parties that the copartnership advanced
the money for the seat, assuming all the time for the benefit
of defendant that there was but one purchase.    There is
nothing contradictory upon this point between the release and
the books.    The former was executed for a certain purpose
and it is indecisive upon this question.    The books contain
the later utterances of the parties and they are perfectly plain
and explicit.

It is suggested that these entries might relate to and evi-
dence an individual transaction between the brothers, an

26

individual loan by one to the other, but of course this is at variance with the fundamental principles of bookkeeping. The books of a copartnership represent the copartnership and every transaction properly entered thereon must be one to which the copartnership is a party. When the defendant was charged upon the books of this copartnership with the cash advanced for his seat, it necessarily meant that the copartnership was the other party to the transaction and was entitled to credit for the advance thus made.

It is also urged that the release in question discharged any indebtedness and that the account referred to evidenced a merely moral and not a legal obligation.

The latter suggestion is so utterly untenable as to require little discussion. Merely moral obligations have no place upon the business books of a copartnership. Such books contain a statement of the legal assets and liabilities of the firm, and when men enter upon their books a debit or a credit balance of many thousands of dollars they are presumed to be dealing with claims which are legally enforceable and which do not rest upon mere option or morality.

I, therefore, pass to the claim that the indebtedness was discharged.

At the outset I am at much loss to find any evidence that the release can, if it was so intended, properly affect or discharge the copartnership claim against defendant. It did not purport to discharge any claims which might accrue in the future to the testator, much less to the firm. Many days after it was executed the defendant charged himself upon the copartnership books with cash advanced for his seat. Those entries mean that on that day the firm advanced the money and first became his creditor upon the transaction in question. Presumptively and in the absence of evidence showing the contrary the money was advanced upon the date when it was charged upon the books, and this claim now before us did not exist when the release was executed and could not have been discharged by it. And there is nothing unreasonable in this view, for the copartnership might very well at this later date

come into the transaction and advance the money and take up an indebtedness which had theretofore been carried elsewhere. What I emphasize is, that we have here the uncontradicted and unexplained admission of the defendant by entries which are binding upon him, that at a certain date the copartnership advanced money to or for him, and that this copartnership indebtedness was not affected by a prior individual release of one copartner.

However, passing by this and assuming upon some vague and undefined theory, rather than in accordance with any proof that the release might relate to the same transaction evidenced by the entries, and might possibly, therefore, affect the indebtedness proved thereby, I still do not think such result was, in fact, either intended or accomplished.

I have already referred to the rule of the Stock Exchange, which required an assurance that a proposed member was free from indebtedness as a protection to the members against any claim which any person might have for moneys advanced for the purchase of his seat. The defendant was about to become such member. The testator, whether he did it as an individual or by means of the copartnership capital which he had solely furnished, advanced the money for the purchase of the seat. He executed the instrument in question which, as between him and the Stock Exchange, would have operated to prevent any claim for this advance in whichever form made. It was delivered to, retained by and upon the hearing produced by the Stock Exchange. So far as appears the defendant never saw or heard of it, and it seems to me that upon this evidence alone the fair presumption would be that the testator executed the instrument simply for the limited purpose of complying with the rules of the Stock Exchange and that otherwise said release was not intended to cancel any indebtedness. And upon this point the finding of the learned referee seems not only not to oppose, but expressly to sustain the theory which I am urging. He finds " that thereafter and on the 6th day of January, 1887, said release was *delivered to the New York Stock Exchange for the purpose of enabling*

*the defendant to obtain membership in said Exchange and so to be in a position to make use of his seat therein.*"

But again we are not left to evidence which standing by itself might be indecisive.

In the natural order of things the release to the Stock Exchange would first 'be executed to enable a person to become a member, and then sometime thereafter the seat and membership would be granted, and so not unnaturally we find a few days after the date of the release these entries made upon the copartnership books which were binding upon the defendant not only because he was a member of the partnership, but because they were actually made in his handwriting, which stated that on that day the copartnership had advanced upwards of $30,000 for the purchase of the seat. And still later upon every year for seven years down to the dissolution of the firm we find the defendant regularly charged upon these books, thus binding upon him, with interest upon this advance, and still further in addition a letter expressly acknowledging his indebtedness. It seems to me that such an account and such entries ought to mean something; that a man does not permit to be carried upon the business books of a copartnership of which he is a member an indebtedness of over $30,000, likewise acknowledged by a letter written with reference to death and testamentary administration, unless he owes it, or that an indebtedness which by the intention of the parties has been legally and fully discharged and canceled is thus thereafter entered and carried along in open and current account. It seems to me that these acts are so deliberate and long continued and are so utterly inconsistent with and opposed to the idea that this indebtedness had been canceled that we ought not to permit such effect against an estate from a purported release executed for a merely nominal consideration, unless we are compelled to. I do not think we are thus compelled to, but that in the manner indicated such effect may be given to both the release and the entries upon the books as will accomplish the true intent and understanding of the parties. The former as found

by the referee was executed for the limited purpose of assurance and protection to the Stock Exchange; the latter represented and confessed the true situation between the parties.

In the discussion already had I have referred to and considered the findings of the referee adopted by the courts so far as I desire to, with one exception. A finding apparently as of fact has been made, being the ninth one of the referee, that the execution of the release heretofore referred to and the "delivery of the same to the New York Stock Exchange operated to release and discharge the defendant from any obligation to repay the amount so advanced to him by the plaintiff's testator for such purchase of a seat in the said New York Stock Exchange." This conclusion is one of law and adds nothing to the findings already considered.

The judgment should be reversed and a new trial granted, costs to abide event.

HAIGHT, J. (dissenting). Edwin S. Chapin and Albert K. Chapin were brothers, and from the year 1886 until the 1st day of May, 1896, were copartners in business as stockbrokers, Edwin S. Chapin having contributed $100,000, the entire capital of the firm. He died on the 3d day of September, 1901, leaving a last will and testament, in which the plaintiff and the defendant were appointed executors.

This action was brought by the plaintiff against his co-executor, individually and as such co-executor, for a copartnership accounting. The only items in dispute brought up for review in this court appear upon the ledger of the firm under the head, "A. K. Chapin, New York Stock Exchange Seat." It commences with the charge under date of January 20, 1887, "to cash, $30,110," then follows the charging of interest and the crediting of payments made from time to time until May 1, 1895, when the balance was $37,078.80. These entries in the book are in the handwriting of the defendant, and it is, therefore, claimed on behalf of the plaintiff that it establishes an indebtedness on his part individually to the firm in the amount stated in the account. Such, doubtless, would be the

inference to be drawn from the fact that the account appears upon the books of the firm, had the case been rested upon this evidence. But it appears that the defendant was desirous of becoming a member of the Stock Exchange, and that, under the rules of the exchange, he was required to show that he had purchased a membership and paid therefor, and that he did not owe anything by reason of such purchase. It also appears that on the 6th day of January, 1887, Edwin S. Chapin executed to him a general release of all claims and demands whatsoever in law and equity, and "more particularly by reason of an advance of the sum of $29,000 made to the said Albert K. Chapin to enable him to purchase a membership in the New York Stock Exchange." It further appears from the plaintiff's own showing that after the death of Edwin S. Chapin the defendant made a statement in the presence of two or three persons to the effect that he was owing his brother for the money advanced to him to purchase his seat on the Stock Exchange, and also by a letter written by him to his brother before his death, in which he stated :

"Understanding that you are thinking of appointing me one of the executors or trustees under your will upon your decease, and being now indebted to you on account of the purchase money of my seat in the New York Stock Exchange, I do most cheerfully hereby agree to act as such executor or trustee, or both, under your will, if so appointed thereby, without any commission or compensation other than a release by your will or otherwise from so much of my indebtedness as would equal the commission or compensation to which I should otherwise be entitled.

"Yours affectionately,
"A. K. CHAPIN."

There is other evidence in the case, but that to which I have called attention is sufficient to present the question which, I think, disposes of this case.

The referee has found as a fact "that the sum of $37,078.80

appearing on the books as ' A. K. Chapin Stock Exchange Seat' represented moneys advanced by the plaintiff's testator to the defendant in the month of January, 1887, to enable him to purchase a seat in the New York Stock Exchange," and further "that the Stock Exchange seat so purchased by the defendant with the money so advanced was his own individual property and was not partnership property belonging to said firm." The item was, therefore, rejected as a copartnership claim against the defendant and the judgment entered thereon has been affirmed by the Appellate Division. Inasmuch as our jurisdiction is limited by the Constitution to the review of questions of law we are concluded by these findings and the affirmance by the Appellate Division, unless, as a matter of law, there was no evidence to sustain the finding. This, I think, cannot properly be held. The release to which we have referred recites the advancement of the money for the purchase of a membership in the Stock Exchange by Edwin S. Chapin. It is signed by him individually and not by the firm. It was filed with the Stock Exchange. It was so executed and filed for the purpose of showing to the exchange that Albert K. Chapin was freed from any indebtedness by reason of the loan, so as to qualify him to become a member of the exchange and thus make him solvent and able to perform financially his obligations to his associates in the exchange. If the loan had been made to him by the firm and it was a firm obligation, then the indebtedness was not discharged and the effect of the release would be to deceive the officers of the exchange with reference thereto. The admissions proved by the plaintiff to have been made by the defendant both orally and by his letter referred to are admissions of his liability to his brother Edwin S. Chapin individually and are not an admission of indebtedness to the firm. The entry upon the books of the firm does not state it to be a firm charge, but is entered under the name of " A. K. Chapin New York Stock Exchange Seat," which, were it not for the fact that it appears upon the company's book, would be consistent with the findings of the referee. As we have seen, the capi-

tal for the copartnership was wholly contributed by Edwin S. Chapin. It does not appear upon the general account between the copartners that the sum of $29,000 or of $30,110 was ever drawn from the assets of the firm by Albert K. Chapin for the purpose of purchasing the Stock Exchange seat. The only reference to those items is in the account, to which reference has been made. The theory of the referee apparently was that it was a special account, entered for convenience upon the books in order that the defendant's liability to his brother might be perpetuated, and I think it cannot be properly held that there is no evidence or inferences to be drawn from the facts shown to support this theory. Whether or not the plaintiff can recover the amount of the defendant upon an action brought by him for that purpose, as a claim owing by the defendant to the plaintiff's testator individually it is not necessary to now determine. This action was for a copartnership accounting. The item, not being a copartnership claim under the findings, the judgment should be affirmed, with costs.

EDWARD T. BARTLETT, VANN and CHASE, JJ., concur with HISCOCK, J.; CULLEN, Ch. J., and GRAY, J., concur with HAIGHT, J.

Judgment reversed, etc.