## In re ATWATER et al.

(Circuit Court of Appeals, Second Circuit.   May 19, 1920.)

No. 219.

1. **Evidence** ⊕═⊃409—**Parol evidence inadmissible to vary writing.**

Parol evidence is inadmissible to vary a written instrument, and so cannot be received to show that claims not included in a release were understood at the time of execution to be embraced.

2. **Evidence** ⊕═⊃450(12)—**Parol evidence admissible to explain a release.**

Parol evidence is admissible to explain a release, where not changing the nature of contract, but showing the reason for its execution and its application; but a valid release conclusively estops the parties from litigating a claim released and forever extinguishes a personal right of action.

3. **Release** ⊕═⊃23—**Invalid release binding until set aside.**

A release, even if invalid, is binding on the parties, until attacked in proper manner and set aside.

4. **Cancellation of instruments** ⊕═⊃4—**A release may be canceled for mistake, fraud, etc.**

Where a release is invalid because of mistake, fraud, duress, or undue influence not inherent in its execution, it may upon proper application be canceled by court of equity.

5. **Release** ⊕═⊃25—**The intention of the parties must govern.**

A release, like other contractual obligations, has for its primary rule of construction the intention of parties, which must govern; but this intention must be ascertained from the words used in the instrument, and not from matters dehors the writing.

6. **Release** ⊕═⊃22—**Claim for funds given bankrupt to purchase seat on exchange barred by release.**

Where claimant advanced to his son, one of the bankrupts, funds sufficient to purchase a seat on the New York Stock Exchange, and in order to comply with rules of exchange as to ownership executed a release of all claims on account of advances, *held* that, notwithstanding claimant received interest on the amount paid, such release is binding with respect to ordinary creditors of partnership of which the son was a member, and claimant cannot as against them assert any right to the proceeds of sale of exchange seat, even though there were no persons entitled under rules of exchange to priority in the proceeds, for a release completely extinguishes all rights, etc.

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Morton Atwater, Eliot Atwater; Gilbert F. Foote, and Harold W. Sherrill, individually and as copartners doing business as Atwater, Foote & Sherrill, bankrupts.   On petition of Stephen G. Guernsey and others the claim of Edward S. Atwater was expunged, and claimant appeals.   Affirmed.

Frank B. Lown, of Poughkeepsie, N. Y., for appellant.

C. W. H. Arnold, of New York City (Daniel P. Hays and Henry H. Kaufman, both of New York City, of counsel), for respondent trustee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.   The firm of Atwater, Foote & Sherrill were stockbrokers engaged in business at Poughkeepsie, N. Y.   A

⊕═⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

petition in bankruptcy was filed against this firm, and it was duly adjudicated a bankrupt. One of the members of the bankrupt firm was Eliot Atwater, a son of the appellant. The firm was formed under articles of copartnership under date of June 1, 1912, which partnership expired by limitation June 1, 1915. On June 1, 1916, new articles of copartnership were executed, providing for a partnership on a yearly basis from June to June of each year, and thereafter continued indefinitely, but terminable by any partner on 60 days' notice prior to June 1 of any year.

At the time of the adjudication in bankruptcy, the firm existed under the terms of the second agreement, dated June 3, 1916. Before this partnership was formed, Mr. Foote and Mr. Sherrill were doing business as Foote & Sherrill. About June 1, 1912, they were joined by Morton and Eliot Atwater, the sons of the appellant, who was the president of a bank in Poughkeepsie and a man of large means. The father had theretofore done business with the firm of Foote & Sherrill. As a result of his active negotiations, the terms of the copartnership were arrived at. The articles of copartnership provided, among other things, as follows:

"Second. It is understood and agreed that Morton Atwater furnishes to the partnership the loan of fifty thousand dollars ($50,000), working capital; Gilbert F. Foote and Harold W. Sherrill the good will and the business, of the agreed value of ten thousand dollars ($10,000), which they have established and built up under the firm name of Foote & Sherrill; Eliot Atwater the use of his membership on the New York Stock Exchange.

\* \* \* \* \* \* \* \* \* \*

"Third. Every six months there shall be paid to Eliot Atwater such an amount as shall pay interest for six months at the rate of six per cent. (6%) per annum on seventy-five thousand dollars ($75,000), being the purchase price and initiation fee of his membership on the New York Stock Exchange.

\* \* \* \* \* \* \* \* \* \*

"Fourth. All the earnings of Eliot Atwater, as a member of the New York Stock Exchange, shall accrue to the firm.

\* \* \* \* \* \* \* \* \* \*

"Tenth. In the event that Eliot Atwater should wish upon the dissolution of the partnership, to sell or transfer his membership on the New York Stock Exchange, he agrees to give to Morton Atwater, Gilbert F. Foote, and Harold W. Sherrill the option to purchase said membership at the price then current, but said option shall expire 60 days after the dissolution of the partnership."

On May 16, 1912, a seat on the exchange was purchased by Eliot Atwater; payment therefor was made by Edward S. Atwater. Thus, at the time of entering into the copartnership agreement, Eliot Atwater individually owned a seat on the New York Stock Exchange. Prior to June 1, 1912, the appellant executed and delivered to Eliot Atwater a sealed general release—

"of all claims and demands whatsoever in law or in equity which against the said Eliot Atwater I ever had, now have, or which I or my heirs, executors, or administrators hereafter can, shall, or may have, \* \* \* and more particularly by reason of an advance of the sum of $75,000 made to said Eliot Atwater to enable him, the said Eliot Atwater, to purchase a membership in the New York Stock Exchange."

A release of like import was executed and delivered on the same day to Eliot Atwater, and referred to a payment of $2,010 paid as in-

itiation fee to the New York Stock Exchange. This sum was paid by the appellant, thus making $75,000, which is the subject of the claim presented by the appellant to the trustees, and which has been expunged by order of the court below.

The questions presented on this appeal are: (1) Was the Stock Exchange seat owned by the firm, or was it the individual property of Eliot Atwater? (2) Is the appellant estopped from asserting his claim as against the firm or individual members? In other words, what is the effect of the release given?

It is explained by the appellant that the release in question was given solely for the purpose of satisfying the rule of the New York Stock Exchange requiring a member to own his seat free from all liens and incumbrances. The requirement for this is that found in article 15 of the constitution of the New York Stock Exchange, which provides as follows:

"Sec. 3. Upon any transfer of membership, whether made by a member voluntarily, or by the governing committee, or the committee on admission in pursuance of the provisions of this constitution, the proceeds thereof shall be applied to the following purposes, and in the following order of priority, viz.:

"First. The payment of all fines, dues, assessments and charges of the Exchange or any department thereof against members whose membership is transferred.

"Second. The payment of creditor's members of the Exchange, or firms registered thereon, of all filed claims arising from contracts subject to the rules of the Exchange, if and to the extent that the same shall be allowed by the committee on admission.

"If said proceeds shall be insufficient to pay such claims as so allowed in full, the same shall be applied to the payment thereof pro rata.

"Third. The surplus, if any, of said proceeds shall be paid to the person whose membership is transferred, or to his legal representatives, upon the execution by him or them of a release or releases satisfactory to the committee on admission."

It is apparent, from the date of purchase of the membership by Eliot Atwater and from the terms of the copartnership agreement, which are quoted above, that Eliot Atwater individually owned the membership in the Stock Exchange, and did not convey it to the firm at any time during the existence of the copartnership. The copartnership agreement provides that Eliot Atwater should not share in the profits, unless the earnings and commissions on the Exchange equaled or exceeded the amount paid to him for the same period for interest upon the value of his membership in the New York Stock Exchange. The copartnership articles further provided that, every six months after the formation of the firm, interest was to be paid by the firm to Eliot Atwater. He, in turn, paid the same to his father, the appellant, and after a time the firm's checks were made out directly to the appellant. Thus it will be observed that Edward S. Atwater received interest on the $75,000 which he advanced to his son, Eliot Atwater, at the time of the formation of the copartnership, and this continued down to the last interest period before the bankruptcy.

It is contended by the appellant that, the membership in the New York Stock Exchange, being the individual property of Eliot Atwater, the proceeds of the sale belong to his individual estate; that, since it appears there were no Stock Exchange creditors whose names have a

preference under the rules, an individual creditor, such as the appellant, is entitled to be paid from such individual estate before any part of it be applied to the payment of the firm's debts. Apparently the membership has been sold.

[1-6] What effect have the releases upon appellant's claim? Releases may be invalid for lack of proper formality, for want of legal consideration, for incapacity of releasor to execute by reason of the absence of real consent thereto, or owing to illegality. On the other hand, a release is not invalid because improvidently executed, or because the releasee did not need the money to be paid, and voluntarily waived payment of the full consideration therefor. The scope and extent of a release depend as a rule upon the interest of the parties as expressed in the terms of the particular instrument. Parol evidence is inadmissible to prove that claims not included in the writing were understood at the time of the executing of the release to be embraced in the transaction. Parol evidence cannot be offered to vary the document. St. Louis & S. F. Ry. Co. v. Dearborn Co., 60 Fed. 880, 9 C. C. A. 286; Holbrook v. Sperling, 239 Fed. 715, 152 C. C. A. 549. Parol evidence is admissible where, while not changing the nature of the contract, it shows the reason for the execution of the release, and points out its use and application.

But a valid release as conclusively estops the parties from reviving and litigating the claim released as a final act, and it forever extinguishes a personal right of action. It completely discharges and extinguishes all rights and claims of the releasor against the releasee which are included in the release; and this is true, even though the releasee fails fully to perform a promise which was the consideration for the release, unless the operation of the release was based upon full performance. Even if invalid, it is binding upon the parties until attacked in a proper manner and set aside. Where a release is invalid because of mistake, fraud, duress, or undue influence, not inherent in its execution, it may, upon proper application, be canceled by a court of equitable jurisdiction. A release, like every other contractual obligation has for its primary rule of construction the intention of the parties. This must govern. This intention, however, must be clear from the words used in the instrument, and not from matters dehors the writing. Hoes v. Van Hoesen, 1 Barb. Ch. (N. Y.) 379; Sherburne v. Goodwin, 44 N. H. 271.

The release here does not contain any limitation which would indicate an intent at the time of its execution of a conditional delivery, so as to satisfy the requirements to purchase a membership upon the Exchange. We cannot read into the language of the release such limitation, and thus defeat the claims of other creditors. The appellant was an attorney at law, although not actually engaged in practice. He had full opportunity to read and understand the force and effect of the document he executed. He released the whole world from payment of the sum involved. By this document, he represented, not only to the Stock Exchange members, but to every one, that so far as he was concerned his son owed him nothing for the Stock Exchange membership. Nor can we support the claim of the appellant, because he

received interest on the loan of $75,000 from his son against this sealed and solemn instrument of release. We think he is estopped from asserting his claim.

In Sterling v. Chapin, 185 N. Y. 395, 78 N. E. 158, the action was for a copartnership accounting between two brothers, the plaintiff's testator and the defendant. No rights of creditors arose. The question decided by the court was one as to the rights between the partners. The deceased partner had advanced all the money for the purchase of a membership in the Stock Exchange. The deceased partner had given a release to the Exchange similar to the one here. It will be noted that the delivery was made to the Stock Exchange, and not to the borrower of the money. An account was opened in the books of the copartnership several years after the execution of the release, and it was carried on such books at the time of its dissolution, and in that account the defendant each year, exclusive of the one ending when the partnership was dissolved, was charged with interest on the balance shown due from him, and was credited with various payments, in addition to which the defendant, more than 2½ years after the execution of the release, wrote to his brother a letter which acknowledged his indebtedness to him of the amount charged against him. The court, in holding the obligation a valid one, said:

"What I emphasize is that we have here the uncontradicted and unexplained admission of the defendant, by entries which are binding upon him, that at a certain date the copartnership advanced money to or for him, and that this copartnership indebtedness was not affected by a prior individual release of one copartner."

We are of the opinion that the court below did not err in sustaining the special master, who reported, expunging the claim of the appellant.

Order affirmed.

WARD, Circuit Judge (dissenting). A release under seal cannot be contradicted by one party as against the other, or as against a third party who has been prejudiced by relying upon it, as, for instance, in this case, against the Stock Exchange or Stock Exchange creditors for whose benefit the release was executed. But obviously both parties to a release may agree that between themselves it really meant something different from what it said. In this case, for instance, if there had been no bankruptcy, Eliot Atwater and his father, Edward S. Atwater, could have agreed that the release, though general was made for the benefit of the Stock Exchange creditors only, and that the transaction was as between themselves a loan by the father of the price of the seat to the son. If that was the fact, no other creditor of Eliot Atwater could prevent his father from recovering and collecting a judgment from him for the amount of the loan. So, if Eliot Atwater had died, any admission by him to this effect could have been availed of by his father. Sterling v. Chapin, 185 N. Y. 395, 78 N. E. 158.

On the other hand, any creditor of Eliot who had relied upon the release, and who would be prejudiced by its being contradicted, might insist upon its literal enforcement as to him. This is on the ground of estoppel. But there is no evidence whatever in this case that any

creditor of the firm or of Eliot Atwater individually did so rely, or even know of the existence of the release, and I think there can be no estoppel in favor of the trustee in bankruptcy representing the creditors in general. It is to be noted that Edward S. Atwater is not claiming title to the bankrupt's seat, or to its proceeds, but is simply asking to prove his claim for money loaned to the bankrupt. I think the proof of claim should be allowed, and if in the course of the bankruptcy proceedings the trustee can show that any creditor or creditors, by relying on the release, have been prejudiced, relief may be given to them.