LILLIAN T. McMANUS, Plaintiff, *v.* NED D. BIDDISON, Defendant.*

Supreme Court, New York County, March 6, 1934.

* Affd., 242 App. Div. 623.

*McKercher & Link* and *George Link, Jr.,* for the plaintiff.

*Alfred L. Marilley,* for the defendant.

INGRAHAM, J. These are cross-motions for summary judgment brought by the respective parties to this litigation under rules 113 and 114 of the Rules of Civil Practice. In 1927 the defendant appears to have been extremely anxious to become a member of the New York Stock Exchange, but did not possess sufficient capital to realize his ambition. Plaintiff's assignor advanced the sum of $274,010 to the defendant for the purpose of purchasing the latter's membership in the exchange. Of the amount advanced all but $88,910.20 has been repaid, together with interest up to June 30, 1933. The defendant has pleaded a general release in writing signed by the plaintiff's assignor and dated October 25, 1927. This release, as appears from the affidavit of the secretary of the New York Stock Exchange, is upon the printed form prepared by the exchange and is intended to cover transactions similar to the one out of which the present litigation has grown. It was prepared in the office of the present secretary of the exchange, was forwarded to plaintiff's assignor, and, after being received from him signed and acknowledged, was filed with the exchange. Its purpose and effect is according to the affidavit " to assure that the value of a membership on the exchange shall be unencumbered for the protection of all future creditors whether they be other members of the New York Stock Exchange or members of the public in general who have business relations with the member." The release, reciting the consideration of $1, receipt of which from the defendant is acknowledged by plaintiff's assignor, follows the usual form releasing the defendant from all actions, claims and demands, except that it concludes: " And more particularly by reason of an advance of the sum of $274,000 — two hundred and seventy-four thousand dollars — made to said Ned D. Biddison to enable him, the said Ned D. Biddison, to purchase a membership in the New York Stock Exchange." The plaintiff's assignor asserts in his affidavit supporting the plaintiff's motion for summary judgment that thereafter (in a subsequent affidavit the date is fixed as October 27, 1927) the defendant wrote him as follows: " In connection with the reimbursement to you for this action [the advance of the money] you will note the copy of the release which you executed and which I have filed with the proper authorities. This, as you understand, is primarily for the protection of the exchange and its members against any indebtedness I might incur that would be in the nature

of a lien against the seat itself if the same should come to be sold. *It is not to be taken as a cancellation of my indebtedness.*" (Brackets and italics mine.)

Subsequently the defendant from time to time made payments to apply against the principal of the indebtedness as well as the accrued interest. One letter dated November 8, 1929, reads, " I sent you to-day a check for $100,000 to be applied as follows: Interest on $249,000, six months interest at 5 per cent., $6,225. To apply on loan $93,775. Leaving a balance due you of $155,225. Sorry I couldn't make it much more, but our business needs what else I have. I hope you will continue to be patient with me. (Signed) Bid." In June of 1930 the defendant writes: " If you get to a point where you seriously need the balance, I might be able to shift the loan elsewhere." In February, 1932, he writes that he had " never borrowed money before " the advance of the $274,000. Now defendant claims that his is a moral obligation only and avers his willingness to repay the amount advanced but prays that the present action be dismissed. It is significant that the checks for the amounts of the advance drawn to defendant's order are dated November 10, 1927, while the release upon which the defendant relies is dated October 25, 1927, and the defendant claims to have received the money in November. The money obviously could not have been advanced at the time the release was signed. Moreover, the first letter acknowledging the generosity of plaintiff's assignor could not have been written by the defendant until after the release was signed. In that letter the defendant expressly states the agreement of the parties that the release is " not to be taken as a cancellation " of the latter's indebtedness. Subsequently the defendant in writing acknowledged the transaction as a loan. Ordinarily parol agreements are powerless to vary the terms of a release under seal. (*Van Bokkelen* v. *Taylor,* 62 N. Y. 105.) The execution of a release is, however, an act distinct from its delivery and while parol evidence is incompetent to change or explain the meaning of the release, oral evidence may be received to show whether the delivery of the instrument was intended to be absolute or conditional. (*Stiebel* v. *Grosberg,* 202 N. Y. 266.)

The release with which we are here concerned does not purport to discharge any claims which might accrue in the future. It is dated some days before the money was advanced to the defendant as evidenced by the dates on the checks drawn by plaintiff's assignor. It was delivered to the Stock Exchange and is still in the latter's files. The Court of Appeals in *Sterling* v. *Chapin* (185 N. Y. 395, 403), where facts were almost identical with those presented here and where the wording of the release was the same as in the present

case, states that under the evidence there presented the fair presumption would be that the lender "executed the instrument simply for the limited purpose of complying with the rules of the Stock Exchange and that otherwise said release was not intended to cancel any indebtedness."

Plaintiff's motion for summary judgment is granted and the clerk is directed to enter judgment in his favor in the sum of $88,910.20, with interest from June 30, 1933. Defendant's cross-motion is denied. Order signed.