BANK OF NEW YORK AND TRUST COMPANY and Others, as Committee of the Property of FRANK HALL, an Incompetent Person, Plaintiffs, *v.* CHARLES V. SNEDEKER, Defendant.*

Supreme Court, New York County, April 13, 1939.

*Charles P. Connell,* for the plaintiffs.

*Breed, Abbott & Morgan,* for the defendant.

SHIENTAG, J.   Plaintiffs, as committee of an incompetent, seek a declaratory judgment establishing their right to collect interest on a loan made by the incompetent to the defendant, and for personal judgment against the defendant in the amount of the arrears of interest.

* Affd., 257 App. Div. 939.

Frank Hall, an incompetent, in January, 1931, orally agreed to lend the defendant the sum of $234,000 to enable him to buy a seat on the New York Stock Exchange. Interest was fixed at the rate of six per cent per annum and was to be paid on the fifteenth day of each and every month. The oral understanding between the parties was thereafter reduced to writing in April, 1932.

Shortly after making this agreement with Hall and on January 30, 1931, the defendant signed an agreement to buy the seat referred to. In order to consummate the purchase of the seat the defendant was required, by the rules of the New York Stock Exchange, to obtain from the lender a subordination agreement which, among other things, provided as follows: " The lender covenants and agrees with the applicant that the right of the lender to the repayment of the said sum loaned by him as aforesaid to the applicant shall be, and the same hereby is subordinated to the payment in full of all claims against the applicant or against any partnership registered on the New York Stock Exchange of which he may be a member, arising out of business transacted by him or by such partnership while he is a member of the New York Stock Exchange, and that in any proceeding involving the application of the assets of the applicant, or of such partnership, to the payment of his or its debts, the claims aforesaid shall be fully paid before the lender shall have a right to any payment on account of the said sum loaned as aforesaid, and that as long as the applicant is a member of the New York Stock Exchange and until all such claims are fully paid, the lender will not institute or maintain any suit or proceeding for the recovery of the said sum loaned as aforesaid or any part thereof."

Subsequent to the execution of this agreement on February 2, 1931, and approximately two weeks thereafter, Hall delivered his check in the sum of $234,000 to the defendant. Three days later the latter was elected a member of the exchange. Within one month after the defendant received the check for $234,000 from Hall he paid the first interest installment in the sum of $1,170. Monthly thereafter, with few exceptions, defendant paid the interest until September, 1934. Between that date and March, 1936, monthly interest payments were not made because the defendant was financially pressed. However, in March, 1936, defendant resumed these payments and they were continued until November, 1937. Defaults in the payment of interest were with the consent of Hall. Prior to the fall of 1937, the defendant never claimed, as he now claims, that the interest payments were voluntarily made.

When the defendant refused to make any further monthly payments of interest to the plaintiffs, this action was instituted,

plaintiffs claiming that they are entitled to a declaratory judgment that the defendant agreed to pay interest monthly and that the right to sue for such interest has not been waived. The defendant resists payment of interest on two grounds: (1) That there was no agreement on his part to pay interest monthly; (2) that the agreement executed by him and Hall prior to the making of the loan in which Hall subjected his claims to the claims recited in the instrument, prevents this suit for recovery since the lender agreed not to "maintain any suit or proceeding for the recovery of said sum loaned as aforesaid or any part thereof."

I. Plaintiffs may maintain this action for a declaratory judgment. (Civ. Prac. Act, § 473.) Before answer was served the defendant moved to dismiss the amended complaint, urging that this was not an action for a declaratory judgment. The court at Special Term denied the motion, and upon appeal the sufficiency of the complaint was sustained.

II. The evidence, oral and documentary, is clear that the defendant agreed to pay interest monthly. The examination before trial of the defendant, the written agreement signed by him in April, 1932, acknowledging his obligation to pay interest monthly, the fact that defendant made consistent monthly payments of interest with exceptions here and there, the fact that defendant at no time prior to the fall of 1937 made any claim to the effect that there was no agreement on his part to pay interest monthly, and the additional fact that the defendant did not take the witness stand at the trial to contradict plaintiffs' claim, all show conclusively that there was an agreement to pay interest as urged by the plaintiffs.

Defendant argues, however, that even if such agreement to pay interest monthly was made, it was inconsistent with the subordination agreement. There is no basis for such argument. The subordination agreement is completely silent with respect to the time of the payment of interest, and in such event oral evidence is clearly admissible to supply the omission. (*Newburger* v. *American Surety Co.*, 242 N. Y. 134.) There is nothing in the Stock Exchange rules which prohibits members from agreeing to pay interest monthly. In fact, in July, 1937, the defendant appeared before the executive committee of the committee on admissions of the New York Stock Exchange and reported to the committee the existence of the supplemental document of April, 1932, and the facts and circumstances in connection with the loan transaction, but the committee decided to take no action against the defendant by reason thereof.

Moreover, it was proper to show that the subordination agreement was given for the definite and limited purpose of complying

with the rules of the New York Stock Exchange. (*Sterling* v. *Chapin*, 185 N. Y. 395; *McManus* v. *Biddison*, 152 Misc. 239; affd., 242 App. Div. 623.) In the first of these cases plaintiff's testator advanced money to his brother, the defendant, for the purpose of purchasing a seat on the New York Stock Exchange. Plaintiff's testator executed a general release, as then required by the rules of the exchange, and this release was filed with the exchange. The evidence showed that, notwithstanding the giving of the absolute release, the parties always considered as between themselves that the indebtedness existed. Holding that the release was not a bar to a recovery by the lender, the Court of Appeals said (at p. 403): " it seems to me that upon this evidence alone the fair presumption would be that the testator executed the instrument simply for the limited purpose of complying with the rules of the Stock Exchange and that otherwise said release was not intended to cancel any indebtedness."

There is nothing in the record to sustain the position taken by the defendant that the agreement made by him with Hall to pay interest monthly in any way changed the terms of the subordination agreement or that such agreement affected the rights of the exchange or any of its members.

III. The covenant not to sue relates solely to principal. It is recognized in the law that where there is doubt as to the legal effect of an instrument, that construction which will bring about the more reasonable result is the construction to be adopted. The Court of Appeals has said that no unnatural and unreasonable intention should be ascribed to the parties unless expressed in language too plain to admit of misconstruction. (*Genet* v. *Delaware & Hudson Canal Co.*, 163 N. Y. 173, 180.)

To ascertain the purpose and object of the parties in executing the subordination agreement, and what was sought to be accomplished, the instrument must be considered in its entirety. In the first preamble clause of the agreement it is recited that its execution was made necessary because the committee on admissions of the Stock Exchange desired that " Each lender of the money borrowed for the purchase of the membership shall subordinate or postpone his claim for the repayment of such moneys to the claims of the persons aforesaid." Therefore, where a seat is to be purchased with borrowed money the lender must subordinate his claim for the repayment of " such moneys "— the principal loaned — but nowhere is there any suggestion that he must forego his right to sue for interest on the money loaned. Further, the employment, in the subordination agreement of the words " the lender will not institute or maintain any suit or proceeding for the recovery of the

said sum loaned as aforesaid or any part thereof " refers only to principal and does not include interest. The words " any part thereof " refer back to the " said sum loaned," and can mean only any part of the " said sum loaned." If it had been the intention of the parties to include interest, it would have been an easy matter to have inserted the words in the subordination agreement. In fact, where the parties had reference to interest proper words were chosen; for example, in paragraph first of the agreement, where the borrower acknowledged the receipt of $234,000, it was provided that the borrower repay the sum from time to time with interest thereon or on any unpaid balance thereof at the rate of six per cent from the date of the instrument.

However, in the second paragraph of the instrument, which relates to the covenant not to sue, no mention is made of interest and the lender undertakes to refrain from suit to recover the sum loaned or any part thereof. The obvious reason the words " any part thereof " were inserted in the covenant not to sue was that by virtue of paragraph third the borrower might make voluntary payments of principal. Therefore, in order to remove any possible doubt as to the coverage of the covenant not to sue, the words, " or any part thereof " were inserted.

It seems to me that in construing the covenant not to sue all inferences and implications should be resolved against the party who is seeking to enforce such a restrictive covenant. The agreement not to sue even for principal is a harsh one, but the courts are not permitted to rewrite the clause. However, in the absence of clear and expressive language it should not impose a greater hardship on the party seeking to recover by extending this restrictive clause to include the agreement not to sue for interest. The reference to interest in paragraph third of the subordination agreement does present an ambiguity, but that should be resolved in favor of the lender and against the borrower and the Stock Exchange.

The conclusion thus reached is fortified by the fact that the committee on admissions of the New York Stock Exchange amended the form of the subordination agreement in September, 1937, by providing that suit may not be instituted for the recovery of the sum loaned or any part thereof or for the recovery of interest thereon. The effect of this modification may be considered by the court in determining the meaning and intent of the prior document. (*Matter of Miller*, 110 N. Y. 216; *Matter of Harbeck*, 161 id. 211.)

If, as argued by the defendant and the New York Stock Exchange appearing *amicus curiæ*, the new form did nothing more than to

clarify the situation and remove doubts, those doubts clearly should be resolved in favor of the plaintiffs, particularly when there was an agreement on the part of the defendant to pay interest monthly and also because the agreement to pay interest did not in any wise contravene any of the rules of the New York Stock Exchange. It would be highly inequitable to allow the defendant to escape the payment of interest in the face of his express promise, both oral and written.

IV. The judgment in this case will not affect in any manner the rights of the exchange or any of its members or any of the exchange creditors, if any, of the defendant. Upon the trial the defendant conceded that no claims of any kind have ever been filed with the exchange against him or against his membership either by the exchange itself or by any member of the exchange or any Stock Exchange firm.

Defendant further conceded that no statement was ever filed with the exchange that he was unable to meet his obligations. The equities clearly preponderate in favor of the plaintiff.

V. Judgment is accordingly directed in favor of the plaintiffs for the relief demanded in the complaint. Settle judgment.