The GLEASON WORKS, Plaintiff,

v.

KLINGELNBERG–OERLIKON GEAR-TEC VERTRIEBS–GMBH, et al., Defendants.

No. 98–CV–6275L.

United States District Court, W.D. New York.

July 27, 1999.

Michael Wolford, Wolford & Leclair LLP, Rochester, NY, John M. Romary, Jeanne M. Tanner, Liam O'Grady, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, for The Gleason Works, plaintiff.

Lawrence Cruz, John Linderman, McCormick, Paulding &. Huber, LLP, Hartford, CT, for Klingelnbeg–Oerlikon Geartec, Vertriebs—GMBH, defendant.

Paul J. Yesawich, III, Neal L. Slifkin, Harris, Beach & Wilcox, Rochester, NY, Lawrence Cruz, John Linderman, McCormick, Paulding & Huber, LLP, Hartford CT, for Oerlikon Geartec AG, defendant.

Paul J. Yesawich, III, Neal L. Slifkin, Harris, Beach & Wilcox, Rochester, NY, Frank A. Edgar, Jr., Thomas G. Johnson, Jr., Willcox & Savage, P.C., Norfolk, VA, Lawrence Cruz, John Linderman, McCormick, Paulding & Huber LLP, Hartford, CT, for Liebherr–America, Inc., defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

Plaintiff, The Gleason Works ("Gleason"), commenced this action for patent infringement against defendants Klingelnberg–Oerlikon Geartec Vertriebs–GmbH

("Klingelnberg"), Oerlikon Geartec AG ("Oerlikon"), and Liebherr America, Inc. ("Liebherr"). Klingelnberg, a German corporation with its principal place of business in Germany, and Oerlikon, a Swiss corporation with its principal place of business in Switzerland, are allegedly related companies, although at this stage the precise nature of their relationship is not clear. The complaint alleges that Klingelnberg and Oerlikon manufacture gear-making machines that infringe a patent held by Gleason for a computer-controlled gear-generating machine. Gleason alleges that Liebherr, a Virginia corporation with its principal place of business in Virginia, sells the infringing products on behalf of Klingelnberg and Oerlikon in the United States.

Klingelnberg and Oerlikon have each moved to dismiss the complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground of lack of personal jurisdiction. After Klingelnberg filed its motion, Gleason and Klingelnberg entered into a stipulation whereby plaintiff voluntarily dismissed Klingelnberg from the action, based on certain representations made by Klingelnberg in support of its motion to dismiss, but retained leave to reinstate Klingelnberg in the event that later-discovered facts revealed a basis for personal jurisdiction. Thus, only Oerlikon's motion is now pending before the court.

## BACKGROUND

The relevant facts are largely undisputed. Oerlikon manufactures the allegedly infringing gear-cutting machine, which is known as Model C–28. In the United States, all of Oerlikon's machines are sold exclusively through Liebherr, an independent distributor.

One particular machine is at issue here. In October 1997, Oerlikon sent a C–28 machine to Liebherr, which accepted it on consignment for sale. The arrangement between Oerlikon and Liebherr was that if the machine were sold, Liebherr would purchase it from Oerlikon and then sell it to the customer.

Liebherr displayed the machine at a tradeshow in Michigan in October 1997. Representatives of Oerlikon attended the show to operate the machine and answer spectators' questions.

After the show ended, the machine was placed at Liebherr's facilities in Saline, Michigan, where it was used as a demonstration machine for customers. In December 1997, Liebherr received a purchase order to place the machine in a Buffalo, New York facility of American Axle & Manufacturing, Inc. ("AAM") for demonstration and testing. The machine was sent there in March 1998, and remained there for at least several months, during which time AAM compared it against a Gleason machine that had been sent by Gleason to AAM, also for testing purposes. Again, Oerlikon personnel went to AAM on several occasions to provide technical support.[1]

## DISCUSSION

### I. Legal Standards

"A plaintiff facing a Fed.R.Civ.P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). Since there has been no discovery in this case, then, plaintiff may defeat Oerlikon's motion "based on legally sufficient allegations of jurisdiction." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.), *cert. denied*, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996); *accord Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert.*

---

1. It is not clear from the record which, if either, machine AAM eventually decided to buy.

*denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). In deciding the motion, the court must also "construe the pleadings and affidavits in plaintiff's favor at this early stage." *PDK Labs,* 103 F.3d at 1108.

In addition, on a motion of this type, the court "has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). While plaintiff has the ultimate burden of establishing jurisdiction by a preponderance of the evidence, prior to an evidentiary hearing or trial "a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Id.; accord Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.,* 827 F.Supp. 171, 174 (W.D.N.Y.1993).

I do not believe that discovery or a hearing is necessary for the court to decide Oerlikon's motion. Most of the relevant facts are undisputed, and the only real issue is their legal significance, specifically whether those facts are enough to create a basis for jurisdiction over Oerlikon.

Personal jurisdiction over Oerlikon in this case is determined by reference to the law of the jurisdiction in which the court sits. *United States v. First Nat'l City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965). In opposing Oerlikon's motion, Gleason relies primarily on N.Y.C.P.L.R. §§ 302(a)(1) and 302(a)(2), which respectively provide for personal jurisdiction in New York over any defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state," or who "commits a tortious act within the state...."

Considerably less is required to establish that a defendant "transacts business" in New York than to show that it is "doing business" here under N.Y.C.P.L.R. § 301. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985). That relative liberality, however, is offset by the added requirement under § 302 that the claim must arise out of the business transacted. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Marketing Showcase, Inc. v. Alberto–Culver Co.,* 445 F.Supp. 755 (S.D.N.Y.1978); *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). Transacting business, then, "requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Manhattan Life Ins. v. A.J. Stratton Syndicate,* 731 F.Supp. 587 (S.D.N.Y.1990).

Although a single purposeful act in New York can suffice to confer jurisdiction in New York over a claim arising out of that act, *Longines–Wittnauer,* 15 N.Y.2d at 456, 261 N.Y.S.2d 8, 209 N.E.2d 68, the court need not find that any one act gives rise to jurisdiction. Instead, the court must consider the quantity and composite quality of the defendant's actions in the aggregate. *Id.; George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 651, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977).

As stated, most of the relevant facts are not in dispute; the parties simply dispute whether those facts support a finding of personal jurisdiction. It is undisputed, for instance, that Rolf Gianesi, a technical service employee of Oerlikon, went to the AAM plant in Buffalo to assist AAM in the operation of the C–28 machine. Since that machine was there for purposes of evaluating it as compared with the Gleason machine, it is reasonably to infer that Gianesi was sent to Buffalo to boost Oerlikon's chances of its machine being chosen over Gleason's.

In addition, Diether Klingelnberg, the Chairman and Chief Executive Officer of

Oerlikon, states that he himself has been to the Buffalo AAM plant approximately three times in the past three years. Plaintiff also alleges that Urs Koller, Oerlikon's Managing Director, has been seen at the AAM Buffalo facility talking to AAM personnel while the Oerlikon machine was in use.

The obvious conclusion to be drawn from these facts is that Oerlikon viewed AAM as at least a potential purchaser of its machines. The mere fact that if AAM did purchase an Oerlikon machine, it would take title from Liebherr rather than directly from Oerlikon, does not alter the fact that Oerlikon has a financial interest in AAM purchasing its machines, and that it has taken actions in New York with an eye toward promoting the sale of its machines. Having done so, Oerlikon cannot shield itself from personal jurisdiction simply by selling its machines through a third party. *See Kernan v. Kurz–Hastings, Inc.*, 997 F.Supp. 367, 373 (W.D.N.Y.1998) (Pennsylvania corporation's agreement to sell Japanese manufacturer's products in United States was sufficient to establish long-arm jurisdiction over Japanese corporation with respect to sale occurring in New York), *aff'd*, 175 F.3d 236 (2d Cir. 1999); *Air–Flo M.G. Co. v. Louis Berkman Co.*, 933 F.Supp. 229, 232 (W.D.N.Y. 1996) (fact that defendant initially distributed its goods from Illinois, and that retail sale in New York was made by independent distributor, did not put defendant beyond the reach of § 302); *see also GB Marketing USA, Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F.Supp. 763, 767–68 (W.D.N.Y.1991) (German corporation subject to personal jurisdiction in New York where corporation "understood that its [product] was being sold in New York . . .").

Although Oerlikon correctly states that a mere social visit is not enough, in itself, to create grounds for personal jurisdiction, "few business discussions can be characterized as entirely social." *CutCo Indus.*, 806 F.2d at 367.

Moreover, "meetings which are partially social in nature, as well as meetings which merely create the likelihood of a more solid business relationship are a sufficient basis for the exercise of in personam jurisdiction." *Interface Biomedical Lab. Corp. v. Axiom Medical, Inc.*, 600 F.Supp. 731, 737 (E.D.N.Y.1985); *Round One Producs., Inc. v. Greg Page Enters., Inc.*, 566 F.Supp. 934, 937–38 (E.D.N.Y.1982). It seems unlikely, to say the least, that the previously mentioned Oerlikon officers and employees would have gone to the AAM facility for purely social reasons.

Construing the record in plaintiff's favor, as I must at this point, I find that Gleason has made a prima facie showing of personal jurisdiction over Oerlikon, and that Oerlikon's motion to dismiss must therefore be denied. The facts alleged by plaintiff indicate that Oerlikon has "purposefully avail[ed] [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws," and has therefore "transacted business" in New York within the meaning of § 302(a)(1). *CutCo*, 806 F.2d at 365 (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967)). Moreover, there can be no dispute that plaintiff's cause of action for patent infringement arises out of Oerlikon's transaction of business here, since Oerlikon has taken affirmative steps to encourage AAM to purchase one of its machines from Liebherr.

I also find that Gleason's allegations are sufficient to make out a prima facie showing of jurisdiction under § 302(a)(2), *i.e.* the commission by Oerlikon of a tortious act within New York. A "cause of action for patent infringement is deemed to arise where the infringing sales are made." *Air–Flo*, 933 F.Supp. at 233. Although Oerlikon contends that there is no evidence that AAM did ultimately purchase any C–28 machines, "[t]he offer for sale of one copy of an infringing work in New York, even if the offer results in no sale, 'constitutes commission of a tortious

act within the state sufficient to imbue this Court with personal jurisdiction over the infringers,' even if the products are offered for sale through independent brokers in New York." *Basquiat v. Kemper Snowboards,* No. 96 CIV. 0185, 1997 WL 527891 (S.D.N.Y.1997) at *3 (copyright case) (quoting *Houbigant, Inc. v. ACB Mercantile, Inc.,* 914 F.Supp. 964, 979–80 (S.D.N.Y.1995)).

In short, Oerlikon is simply attempting to use Liebherr as a shield, claiming that all of the relevant actions were taken by Liebherr and were entirely outside Oerlikon's control, but it is plain that Oerlikon was directly involved in those activities. Oerlikon's contention that it "simply supported Liebherr in its sale efforts," Oerlikon's Reply Memorandum at 4, seems disingenuous at best. The facts alleged by Gleason—many of which are admitted by Oerlikon—indicate that Oerlikon has deliberately entered New York and engaged in activities intended to promote the sale of its products here. That is clearly enough to create a basis for jurisdiction under §§ 302(a)(1) and (a)(2).

Oerlikon's contention that it lacks the minimum contacts with New York needed to satisfy constitutional standards, *see International Shoe Co. v. State of Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945), requires little comment. It was clearly foreseeable to Oerlikon that its products might be sold in New York, especially once Oerlikon learned that AAG had ordered a C–28 for evaluation purposes, and Oerlikon took deliberate steps within this state intended to foster such sales. That is more than enough to satisfy the requirements of due process. *Kernan,* 175 F.3d at 241 (agreeing with district court's conclusion that distributor's agreement to sell defendant's products in (among other places) the United States was sufficient in and of itself to support a finding of " 'foreseeability° . . . coupled with a purposeful act' " for purposes of § 302(a)(3)(ii)).

## CONCLUSION

Defendant Oerlikon Geartec AG's Motion to Dismiss (Item 9) is denied.

IT IS SO ORDERED.