**Miriam BORUMAND, Plaintiff,**

v.

**Bijan ASSAR and Zahar Assar, Defendants.**

**No. 01–CV–6258(CJS).**

United States District Court,
W.D. New York.

Dec. 19, 2001.

Christopher J. Calabrese, Rochester, NY, for Plaintiff.

Thomas E. Lenweaver, Trevett, Lenweaver & Salzer, PC, for Defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

This is a diversity action, alleging conversion, fraud, and breach of fiduciary duty. Now before the Court is defendants' motion [# 3] to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim, pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion to dismiss is granted as to Zahar Assar, but is denied as to Bijan Assar.

## BACKGROUND

The plaintiff, Miriam Borumand, is a resident of Rochester, New York. The defendants, Bijan Assar and Zahar Assar, are residents of Massachusetts. Bijan Assar is the plaintiff's ex-brother-in-law, and Zahar Assar is Bijan's sister. Plaintiff commenced the subject action on May 22, 2001. The Complaint alleges that, in August and October, 1994, while Bijan Assar was still married to plaintiff's sister, he told plaintiff that if she would provide $13,400.00, he would use the money to purchase stock in the company at which he was employed, Helix Technology Corporation. The complaint further alleges that both defendants told plaintiff that they would keep possession of the stock, but would provide her with the stock upon demand. On or about July 2000, plaintiff demanded possession of the stock, which at that time was worth approximately $85,800.00, but defendants refused to provide her with the stock. As a result, plain-

tiff alleges claims for conversion, fraud, and breach of fiduciary duty, and demands judgment in the amount of $85,800.00, as well as punitive damages and costs.

In lieu of answering the complaint, on July 19, 2001, defendants filed the subject motion to dismiss. The motion contends, first, that subject matter jurisdiction is lacking, because, although there is complete diversity between the parties, the amount in controversy does not exceed $75,000. In support of this ground, defendants allege that in February 2001, plaintiff's former counsel indicated that plaintiff was owed only $19,000.00, plus five years' interest. (*See*, Defendants' Motion, Exhibit B). As for personal jurisdiction, defendants contend that they have "minimal contact with the State of New York, and no contact with the plaintiff in the State of New York concerning the substance of her complaint sufficient to give rise to any personal jurisdiction." (Lenweaver Affidavit, ¶ 6). For example, Bijan Assar contends that he only received money from plaintiff in Rhode Island, and that "[n]one of the transactions took place in the State of New York." (Bijan Assar Affidavit, ¶ 7). He further alleges that he had only two contacts with New York State involving the plaintiff: 1) he attended plaintiff's wedding in Rochester, New York, in 1992 or 1993; and 2) he paid a social visit to plaintiff at her home "around the end of 1994." (*Id.*, ¶ 13). Zahar Assar contends that she also attended plaintiff's wedding, but otherwise has no contacts with the State of New York.(Zahar Assar Affidavit, ¶ 9). She further alleges that she has "never resided in the State of New York, and [has] never conducted any business in the State of New York." (*Id.*, ¶ 7). Defendants further allege that venue in the Western District of New York is improper, because they do not reside in the judicial district, and because none of the events alleged in the complaint occurred here.

Finally, defendants allege that plaintiff has failed to state a claim upon which relief can be granted, because, in 1995, she signed a release, releasing Bijan Assar from any liability as to claims involving the "investment of any funds." (*See*, Bijan Assar Affidavit, Exhibit A).

In response to defendants' motion, plaintiff has submitted affidavits and various exhibits. As to the amount in controversy, plaintiff maintains that, at the time she demanded possession of the stock, it was worth approximately $85,800.00. (Plaintiff's Affidavit, ¶ 31). With regard to defendants' contacts with New York State, plaintiff contends that it was at her home in Rochester, New York, that, on two separate occasions, Bijan Assar made the alleged fraudulent misrepresentations, and that it was there that she gave him $13,400.00 with which to buy the stock. (*Id.*, ¶¶ 4–5). As for Zahar Assar, plaintiff indicates only that she had several conversations with her regarding the stock, but does not indicate where those conversations took place. (*Id.*, ¶¶ 28–29). Finally, plaintiff denies that she released Bijan Assar from liability, and contends that the purported release which defendants have submitted to the court is merely a photocopy, and that the original was never delivered. More specifically, plaintiff has provided evidence that, as part of a divorce settlement agreement between her sister and Bijan Assar, she agreed to provide a release, if he conveyed his ownership in certain real estate to plaintiff's sister. At that time, her sister's attorney provided Bijan Assar's attorney with a copy of a release, stamped "COPY FOR YOUR INFORMATION," with a letter in which he stated, "I am sending you copies of the releases you sent to me, which have been signed by the parties involved. I will deliver these original releases to you in exchange for the quitclaim deeds." (Plaintiff's Affidavit, Exhibit F; D'Addario Affidavit). However, plaintiff, as well as her

sister's counsel, indicate that, since Bijan Assar subsequently became the subject of a criminal prosecution, he could not convey the real property as required under the settlement agreement, and the release was never delivered. Moreover, plaintiff and her sister's former counsel state that Bijan Assar and plaintiff's sister subsequently executed an amended settlement agreement, under which the former agreement became null and void. (Plaintiff's Affidavit, ¶¶ 10, 23–24 & Exhibit H; D'Addario Affidavit).

Defendants' counsel subsequently submitted a reply affidavit, in which he does not challenge plaintiff's version of events surrounding the release, but instead, contends that the photocopy of the release, even though it was given to Bijan Assar's attorney for information purposes only, nonetheless bars this action, since it recites that it was being given "for $1.00 and other consideration, the receipt of whereof is hereby acknowledged." (Lenweaver Reply Affidavit, ¶ 2). Defendants also take the fallback position that, even if the release were ineffective, dismissal is nonetheless appropriate on the grounds of subject matter jurisdiction, personal jurisdiction, and venue.[1]

Counsel for the parties appeared before the undersigned for oral argument on November 29, 2001. The Court has thoroughly considered the parties' submissions and the arguments of counsel.

## ANALYSIS

### Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(1)

As noted above, plaintiff's complaint asserts that this court has diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), which pertains to actions between citizens of different states, where the amount in controversy exceeds $75,000.00. It is settled that, "[t]he burden of proving jurisdiction is on the party asserting it. Where, however, the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994) (citations omitted). A plaintiff's damages in an action for conversion is the value of the property converted: "A person who receives possession of the property of another and thereafter, without authority, intentionally exercises control over it in such a manner as to interfere with the other's right of possession has converted that property *and is liable for its value*." New York Pattern Jury Instructions—Civil 3:11 (1968)(emphasis added). Here, the Court finds that plaintiff has established, prima facie, that the amount in controversy exceeds $75,000.00., since, in the complaint and in her affidavit, she indicates that defendants converted her stock, which was worth $85,800.00. (Complaint, ¶ 12; Plaintiff's Affidavit, ¶ 31). The fact that plaintiff's former attorney demanded less money to settle the action does not defeat this prima facie showing. Accordingly, defendants' motion under Fed.R.Civ.P. 12(b)(1) is denied.

### Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(2)

In order to defeat a motion to dismiss for lack of personal jurisdiction pur-

---

1. The Court notes that, although defendants, in their papers, make certain arguments which one would expect in support of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), they have not moved under that section, but rather, with regard to venue, have moved only to dismiss pursuant to Fed. R.Civ.P. 12(b)(3). (*See*, Defendants' Responding Affidavit, ¶¶ 4, 8; Defendants' Notice of Motion; Defendants' Memo of Law, pp. 12–14).

suant to Fed.R.Civ.P. 12(b)(2), where, as here, the Court is relying solely upon pleadings and affidavits, a plaintiff need only make a *prima facie* showing of facts which establish the Court's jurisdiction over the defendant. *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986); *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996)("Prior to discovery, a plaintiff may defeat a [Rule 12(b)(2) ] motion to dismiss based on legally sufficient allegations of jurisdiction.") (citations omitted), *cert. denied,* 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996). All pleadings and affidavits must be viewed in the light most favorable to the plaintiff, and all doubts resolved in plaintiff's favor. *CutCo Industries, Inc.,* 806 F.2d at 365.

■ A federal court in a diversity action must look to the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether *in personam* jurisdiction exists over a nonresident defendant. *See, Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir.1990) (*citing Arrowsmith v. United Press Int'l,* 320 F.2d 219, 222–25 (2d Cir.1963) (en banc)). If the relevant statute allows the court to exercise jurisdiction, the court must then determine "whether the exercise of jurisdiction comports with due process." *Id.* (citation omitted). In that regard,

> [t]he due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. For purposes of this initial inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts."
>
> The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circumstances of the particular case. The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Metropolitan Life Insurance Co.,* 84 F.3d at 567–68.

■ In the instant case, the specific New York long-arm jurisdictional statute upon which plaintiff apparently relies is Civil Practice Law and Rules ["CPLR"] § 302, which provides, in relevant part:

(a) **Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

New York Civil Practice Law & Rules § 302 (McKinney's 2001). In the context of an action for fraud, section 302(a)(2) is satisfied where a defendant engages in fraudulent conduct while physically present in New York. *See, Bank Brussels v.*

*Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 790 (2d Cir.1999); *NCA Holding Corp. v. Ernestus,* No. 97 CIV. 1372(LMM), 1998 WL 388562 at *5 (S.D.N.Y. Jul.13, 1998).

■ In the instant case, plaintiff's responsive papers do not indicate the alleged statutory basis for personal jurisdiction, but rather, state only that,

[t]he affidavit of the plaintiff shows that the agreement entered into between the plaintiff and Beijan Assar was discussed, and entered into and funds were transferred in the former house of the plaintiff located at 2 Knollwood Drive, Pittsford, New York.... Clearly, the defendant, in proposing an investment vehicle to the plaintiff in Pittsford, New York, and receiving funds totalling $13,400.00, in Pittsford, New York is sufficient to establish minimum contacts with the State of New York.

(Calabrese Affidavit, ¶¶ 5–6). Plaintiff, however, has provided no case citation in support of this statement, and, in fact, submitted no memorandum of law in opposition to defendants' motion.[2] Nonetheless, based upon the foregoing principles of law which the Court has set forth, the Court finds that plaintiff has made a prima facie showing that, on two occasions, at her home in Rochester, New York, defendant Bijan Assar engaged in the fraudulent conduct which is the basis of her fraud claim. Therefore, New York CPLR § 302(a)(2) is satisfied as to the fraud cause of action. The Court also finds that due process is satisfied, since, for the reasons stated above, Bijan Assar has sufficient contact

**2.** During oral argument, plaintiff's counsel suggested that personal jurisdiction was appropriate under CPLR § 302(a)(3), since defendants had allegedly committed tortious acts outside of New York causing injury within New York, and had engaged in a "persistent course of conduct" within the State.

However, even if the Court were to consider this argument, which was not raised in plaintiff's responsive papers, the plaintiff has not made a prima facie showing that defendants engaged in a "persistent course of conduct" within New York State.

with New York that he could reasonably expect to be brought before a court in this state. Moreover, regardless of whether or not the alleged conversion and breach of fiduciary duty occurred in New York State, the Court nonetheless has jurisdiction over those claims as well, since they arise from the same nucleus of operative facts as the fraud claim. *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 721 (2d Cir. 1980)("The district court, having acquired personal jurisdiction over defendant, has power to determine all of the claims asserted in the complaint.").

■ However, plaintiff has not made a prima facie showing of personal jurisdiction as to Zahar Assar. Plaintiff does not allege that Ms. Assar was physically present in New York State to commit any of the alleged torts, nor has she otherwise demonstrated that Ms. Assar is subject to personal jurisdiction under New York CPLR § 302. Rather, the record indicates that Zahar Assar's only contact with New York State was a social visit, to attend plaintiff's wedding.[3] However, a mere social visit is insufficient to establish personal jurisdiction under New York law. *Gleason Works v. Klingelnberg–Oerlikon Geartec Vertriebs–GmbH*, 58 F.Supp.2d 47, 51 (W.D.N.Y.1999). Accordingly, the complaint must be dismissed as against Zahar Assar, for lack of personal jurisdiction.

**Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(3)**

■ Defendants also contend that the action should be dismissed because of improper venue. The relevant venue statute, 28 U.S.C. § 1391(a), provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In the instant case, the only possible basis for placing venue in the Western District of New York appears to be subsection (2). As to that ground, plaintiff asserts that, on two separate occasions, Bijan Assar, made fraudulent misrepresentations to her at her home in Rochester, New York, and that she, in reliance on those representations, provided him with money. Courts have held that, in an action for fraud, venue pursuant to 28 U.S.C. § 1391(a)(2) is appropriate in the judicial district where the defendant allegedly made the fraudulent statements. *PI, Inc. v. Quality Products, Inc.*, 907 F.Supp. 752, 762 (S.D.N.Y. 1995), *motion for reargument denied*, 916 F.Supp. 332 (S.D.N.Y.1996). Defendant denies that any such transactions occurred in Rochester, however, plaintiff swears otherwise, and she is only required to make a prima facie showing at this stage of the litigation. *See, Gianino v. Panacya, Inc.*, No. 00 CIV. 1584(SHS), 2000 WL 1224810 at *9 (S.D.N.Y. Aug.29, 2000)("As plaintiff has set forth a prima facie case that venue is proper and that this Court has personal jurisdiction over defendants ..., their motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) & (3) should be denied."); *Home Insurance Co. v. Thomas Industries, Inc.*, 896 F.2d 1352,

---

**3.** Although plaintiff's papers contend that there is personal jurisdiction over Bijan As- sar, they make no such claim as to Zahar Assar. (See, Calabrese Affidavit, ¶¶ 5–6).

1357 (11th Cir.1990)("[T]o survive a motion to dismiss for lack of venue, plaintiffs need only make out a prima facie showing that the weight of the contacts is sufficient to establish venue."). Accordingly, defendant's motion under Rule 12(b)(3) is denied as to Bijan Assar.

### Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(6)

It is well settled that in determining a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted," a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999). The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations omitted)(*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■■■■■ The sole basis for defendants' motion under Fed.R.Civ.P. 12(b)(6) is the purported release from plaintiff to Bijan Assar.[4] However, plaintiff denies that the release was ever delivered., and the documentary evidence which she has submitted strongly supports her version of the events surrounding the release. It appears clear that, under the law of New York, such an undelivered release would have no effect. *See, McManus v. Biddison*, 152 Misc. 239, 272 N.Y.S. 199, (Sup.Ct., N.Y. County 1934)("The execution of a release is, however, an act distinct from its delivery.") (citation omitted), *aff'd*, 242 A.D. 623, 271 N.Y.S. 1099 (1st Dept.1934); *First Federal Savings and Loan Ass'n of Syracuse v.*

*Ivy Ridge, Inc.*, 76 Misc.2d 208, 350 N.Y.S.2d 111 (Sup.Ct. Cayuga County 1973), *aff'd* 50 A.D.2d 1057, 376 N.Y.S.2d 420 (4th Dept.1975)(Holding that a release of mortgage was ineffective, for lack of delivery, where mortgagee had entrusted the mortgagor to deliver the release to a third party, but instead, mortgagor retained the release and subsequently had it recorded). The same would appear to be true under the law of Rhode Island, where the negotiations involving the release took place. *See, Sokoloff v. Heirs of Peter David Garrow, et al.*, 1992 WL 813579 at *2 (Super.Ct. of R.I., Providence County 1992)("The law unequivocally states that to convey title to land, the deed must be delivered to the grantee. The ordinary test of delivery is whether the grantor by words or acts intended to divest himself of title to the estate described in the deed. If so, the deed is delivered, otherwise it is not. The grantor's present intent to absolutely divest himself of title to the property by virtue of the deed is essential to a valid delivery.") (citations omitted).

■■■■ Defendants do not dispute that the release was never delivered, but instead, contend that Bijan Assar is nonetheless released from liability, because the release recites that it was being given for consideration, the receipt of which was acknowledged. The Court disagrees. In the first place, defendant's argument involves the issue of consideration, which is separate and distinct from the issue of delivery. Second, the language contained in the release is irrelevant if the release was never delivered, and the record indicates that Bijan Assar knows, or should know, that the release was never delivered. The motion under Rule 12(b)(6) as to Bijan Assar is, therefore, denied.

4. During oral argument, defendants' counsel alleged that plaintiff had failed to state a claim for fraud. However, since defendants' moving papers contain no such allegation, the Court has not considered that argument.

## CONCLUSION

For the reasons stated above, defendants' motion [# 3] is granted in part, and denied in part. The motion to dismiss is granted as to defendant Zahar Assar, but is denied in all other respects.

So ordered.