Roy R. ROWLANDS, Plaintiff

v.

**POINTE MOUILLEE SHOOTING CLUB**
and State of Michigan, Department of
Natural Resources, Defendants.

No. 94–74463.

United States District Court,
E.D. Michigan,
Southern Division.

March 13, 1997.

Donnelly W. Hadden, Ann Arbor, Michigan, for Plaintiff.

M. Carol Bambery, Lansing, Michigan, for Defendant Pointe Mouillee.

Stanley F. Pruss, Assistant Attorney General for the State of Michigan, Natural Resources Division, Lansing, Michigan, for Defendant State of Michigan.

## MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS DEPARTMENT OF NATURAL RESOURCES

COHN, District Judge.

### I. Introduction

This is an environmental clean-up case under the Resource Conservation and Recovery Act ("RCRA"). 42 U.S.C. § 6901, *et seq.*

Plaintiff, Roy R. Rowlands (Rowlands), is suing the State of Michigan's Department of Natural Resources (DNR) and the Pointe Mouillee Shooting Club (PMSC) under the so-called "citizen suit" provisions of the RCRA, 42 U.S.C. § 6972(a)(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201. Rowlands claims that activities on land owned by the DNR and leased to the PMSC have led to contamination of surrounding land by lead shot and lead bullets.

Before the Court is the DNR's motion to dismiss on the grounds that the Court lacks subject matter jurisdiction because the Eleventh Amendment to the United States Constitution bars RCRA citizen suits against a state defendant. The DNR relies primarily on the Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida,* — U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

For the following reasons, the motion to dismiss the DNR is GRANTED.

## II. Facts

The PMSC, located in Monroe County, Michigan, began operating as a shooting range in 1970. The range is surrounded by a safety zone of approximately 100 acres which borders the Lautenschlager Drain, a waterway that connects to Lake Erie by a series of ditches and artificially constructed canals. The operation of the range has resulted in an accumulation of lead from bullets and target debris in the soil of the range.

The range has been identified by the DNR as an environmentally impacted site. The DNR, on behalf of the State of Michigan, now owns the land on which the range operates. The record does not reveal when or how the DNR came to own the land. The DNR leases the land to the PMSC.

Rowlands resided for nearly 1½ years nine-tenths of a mile from the range. Rowlands moved two months before filing this lawsuit and currently resides on Grosse Isle; it is approximately six miles from the southern-most bridge on Grosse Isle to the range. Rowlands never used the range, nor did he hike or fish within the safety zone. Rowlands says, however, that he often used the lands and water in the vicinity of the safety zone, and continues to visit the area approximately every other day.

On November 3, 1994, Rowlands sued defendants under the citizen suit provisions of RCRA, 42 U.S.C. § 6972(a)(1).[1] Rowlands alleges that the lead pellets and target debris at the range constitute hazardous toxic waste that is contaminating the surrounding soil and groundwater and poisoning fish in Lake Erie via the Lautenschlager Drain. Rowlands alleges that he has been injured as a result of such lead contamination, seeks injunctive, declaratory and other relief.

Defendants moved for summary judgment, arguing that Rowlands lacked standing to sue. The Court denied the motion. *Memorandum and Order Denying Motion for Summary Judgment,* August 8, 1996. The DNR now moves to dismiss the complaint pursuant to *Seminole Tribe of Florida v. Florida,* — U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), on the grounds that the Court lacks subject matter jurisdiction over a RCRA suit against the State of Michigan.

## III. Analysis

■ Rowlands is suing under the citizen suit provisions of the RCRA. 42 U.S.C. § 6972(a)(1).[2] State-law claims are before the Court pendent to federal jurisdiction. 28 U.S.C. § 1367(c). The citizen suit provisions create a cause of action for violations of RCRA, or for conditions presenting an "imminent and substantial endangerment to health or the environment." § 6972(a)(1).

### A.

#### 1.

■ The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

---

1. Rowlands is suing the DNR as the owner and an operator of the range.

2. Though Rowlands also relies on the Declaratory Judgment Act, 28 U.S.C. § 2201, the Act does not confer an independent ground of jurisdiction. *Rueth v. Environmental Protection Agency,* 13 F.3d 227, 231 (7th Cir.1993).

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment "extends to state agencies and to state officers, who act *on behalf of the state* and can therefore assert the state's sovereign immunity." *NRDC v. California Dept. of Trans.,* 96 F.3d 420, 421 (9th Cir. 1996) (emphasis added) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142–46, 113 S.Ct. 684, 686–89, 121 L.Ed.2d 605 (1993)). Rowlands is suing the DNR, which, *"[o]n behalf of the people of the state, ...* may buy, sell, exchange, or condemn land and other property, for any of the purposes contemplated by this part." M.S.A. § 13A.503 [M.C.L.A. § 324.503] (emphasis added).[3] Therefore, the Eleventh Amendment applies to the DNR as a defendant here.

■ The Supreme Court has held that the Eleventh Amendment stands "not so much for what it says, but for the presupposition ... which it confirms." *Seminole Tribe of Florida v. Florida,* — U.S. at —, 116 S.Ct. at 1122 (quoting *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991)). The Eleventh Amendment confirms two presuppositions: "first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Id.* (quoting *Hans v. Louisiana,* 134 U.S. 1, 13, 10 S.Ct. 504, 506, 33 L.Ed. 842 (1890)) (alteration in original). Thus, although the Eleventh Amendment does not explicitly apply to a citizen suing his or her own state, the amendment has been held to bar federal jurisdiction in such cases. *See Hans v. Louisiana,* 134 U.S. 1, 15–18, 10 S.Ct. 504, 507–08, 33 L.Ed. 842 (1890).

### 2.

■ In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614

(1976), the Supreme Court stated that the state sovereignty expressed in the Eleventh Amendment is limited by the enforcement provision of the Fourteenth Amendment.[4] The Supreme Court thus introduced the principle that Congress could, under certain circumstances, abrogate the Eleventh Amendment immunity granted to the states.

"In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' ... and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1123 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)) (citations omitted) (alteration in original).

■ Regarding the first question, the Supreme Court has "applied a simple but stringent test: Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989) (citations omitted), *cited in Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1123.

The sole consideration in answering the second question is: "Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1125. Prior to *Seminole Tribe,* the Supreme Court had found only two provisions of the Constitution that granted Congress the power to abrogate state sovereignty: the Fourteenth Amendment, *see Fitzpatrick,* 427 U.S. at 455, 96 S.Ct. at 2671, and the Interstate Commerce Clause, Art. I, § 8, cl. 3, *see Pennsylvania v. Union Gas Co.,* 491 U.S. 1,

---

**3.** "All executive and administrative offices, agencies and instrumentalities of the executive branch of state government ... shall be allocated by law among and within not more than 20 principal departments." Mich. Const. Art. 5, § 2. The DNR is one of the 19 "principal departments" that have been created by statute pursuant to the Michigan Constitution. M.S.A. § 3.29(4) [M.C.L.A. § 16.104].

**4.** "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. Amend. XIV § 5.

19–20, 109 S.Ct. 2273, 2284–85, 105 L.Ed.2d 1 (1989).

In *Union Gas,* a plurality of the Supreme Court found "Congress' power to abrogate under the Interstate Commerce Clause from the States' cession of their sovereignty when they gave Congress plenary power to regulate interstate commerce." *Seminole Tribe,* — U.S. —, 116 S.Ct. at 1126 (citing *Union Gas,* 491 U.S. at 17, 109 S.Ct. at 2283 ("The important point ... is that the provision both expands federal power and contracts state power.")). Specifically at issue was a suit against the State of Pennsylvania pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* The Supreme Court allowed the CERCLA suit to proceed against the state.

■ The Supreme Court in *Seminole Tribe* noted that the *Union Gas* rationale was not supported by a majority of the Court, and that it "deviated sharply from our established federalism jurisprudence and essentially eviscerated our decision in *Hans.*" *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1127. For these reasons, and because "none of the policies underlying *stare decisis* require our continuing adherence to its holding," the Supreme Court overruled *Union Gas. Id.* at —, 116 S.Ct. at 1128. The Supreme Court concluded: "The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at ———, 116 S.Ct. at 1131–32. Therefore, the only basis on which Congress may abrogate state sovereignty under the Eleventh Amendment is the Fourteenth Amendment.

### B.

#### 1.

■ RCRA does not "unequivocally express[ ]," *Id.* at —, 1123, Congress' intent to abrogate the Eleventh Amendment immunity. In fact, by its very terms, it operates within the Eleventh Amendment: "any person may commence a civil action on his own behalf—(1)(A) against any person including (a) the United States, and (b) any other governmental instrumentality or agency, *to the extent permitted by the eleventh amendment to the Constitution* ... or (B) against any person, including the United States and any other governmental instrumentality or agency, *to the extent permitted by the eleventh amendment to the Constitution.*" 42 U.S.C. § 6972(a). *Compare* the Americans with Disabilities Act, 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 246, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985), *cited in Niece v. Fitzner,* 941 F.Supp. 1497, 1501 (E.D.Mich.1996).

#### 2.

■ In addition, Congress would not have acted "pursuant to a valid exercise of power," *Seminole Tribe,* — U.S. at —, 116 S.Ct. at 1123, even if it had clearly intended to abrogate Eleventh Amendment immunity. Congress enacted RCRA, like CERCLA, pursuant to the Commerce Clause and not the Fourteenth Amendment. *See United States v. Rogers,* 685 F.Supp. 201, 202 (D.Minn.1987) ("The RCRA easily passes constitutional muster as an exercise of congressional power under the commerce clause."). The Supreme Court expressly rejected the Commerce Clause as a basis for the power to abrogate Eleventh Amendment immunity. *Seminole Tribe,* — U.S. at ———, 116 S.Ct. at 1131–32. By enacting RCRA, Congress did not abrogate the states' Eleventh Amendment immunity.

#### 3.

■ Rowlands attempts to distinguish *Seminole Tribe* by arguing that under the RCRA citizen suit provisions, he is acting in the place of the federal government, which could sue the State of Michigan; that RCRA allows only federal jurisdiction, while the statute at issue in *Seminole Tribe* did not

expressly prohibit state jurisdiction; and that state immunity would thwart national enforcement of the environmental laws. These arguments are not persuasive. The RCRA citizen suit provisions, as discussed above, expressly place Rowlands's suit in the framework of the Eleventh Amendment. The Supreme Court, in *Seminole Tribe* itself, made clear that "[e]ven when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States." *Id.* at ——, 116 S.Ct. at 1131. RCRA still provides protection for the environment: the United States can sue a state to enforce the RCRA, *See id.* at n. 14 (Eleventh Amendment allows the United States to sue a state in federal court); *Rogers,* 685 F.Supp. 201 (allowing the United States to enforce RCRA under 42 U.S.C. § 6928); and an individual can sue "a state officer in order to ensure that the officer's conduct is in compliance with federal law." *Seminole Tribe,* —— U.S. at ——, n. 14, 116 S.Ct. at 1131 n. 14; *see also Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

In addition, Rowlands argues that the fact he is seeking injunctive and declaratory relief, not money damages, distinguishes *Seminole Tribe.* However, the Supreme Court has "often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1124.

### C.

Rowlands argues that even if Congress invalidly abrogated state sovereignty in passing the RCRA citizen suit provisions, Michigan has consented to be sued by individuals in federal court. States may consent to suit in federal court and thereby waive their Eleventh Amendment rights. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). In particular, Rowlands argues: under both the Michigan Constitution and Michigan Supreme Court case-law, the State

of Michigan has waived its sovereign immunity; there is no Eleventh Amendment immunity when a state is engaged in a proprietary function; and there is no Eleventh Amendment immunity for localities, which Michigan law has declared to have the same immunity protection as the State.

■ "A state's decision to waive its common law sovereign immunity should not be confused with its constitutional sovereign immunity provided by the Eleventh Amendment." 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3524, at 171 (2d ed. 1984). Rowlands has made this mistake. "Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." *Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907. All of the cases cited by Rowlands are concerned with Michigan's consent to suit in its own courts, rather than in federal court.

■ "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146. There must be "an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Id.* at 238 n. 1, 105 S.Ct. at 3145 n. 1. The Supreme Court in *Atascadero* found that the California Constitution, which allowed suits against the state "in such manner and in such courts as shall be directed by law," did not express California's consent to federal jurisdiction. *Id.* at 241, 105 S.Ct. at 3146. Therefore, the Supreme Court found that California had not waived its Eleventh Amendment immunity.

■ The language Rowlands cites concerning Michigan is not even as strong as the language concerning California found insufficient in *Atascadero.* In *Abick v. Michigan,* 803 F.2d 874, 877 (6th Cir.1986), the Court of Appeals for the Sixth Circuit affirmed the dismissal of a constitutional taking claim,

holding that Michigan did not waive its Eleventh Amendment immunity. In *Niece v. Fitzner,* 941 F.Supp. 1497 (E.D.Mich.1996), the Court implicitly recognized that Michigan has not waived its Eleventh Amendment immunity when it applied the *Seminole Tribe* analysis to a suit against the Michigan Department of Corrections.

### D.

The Eleventh Amendment "constitutional bar applies to pendent claims as well" as federal claims, *Pennhurst,* 465 U.S. at 120, 104 S.Ct. at 918–19, so the pendent state claims against the DNR must be dismissed as well.

### IV. Order

For the reasons stated above, the Court lacks jurisdiction over Rowlands' RCRA and pendent state claims. Therefore, the DNR's motion to dismiss has been granted.[5]

SO ORDERED.

---

**5.** The Court permitted Rowlands to defer responding to the PMSC's motion to dismiss, pending decision on the DNR's motion. Rowlands now has 20 days to respond to the PMSC.