Marie G. **BURNETTE**, Ralph G. Burnette, Jr., Plaintiffs–Appellants,

Brian E. Burnette, A Minor, by his parents and next friends, Ralph & Marie Burnette, et al., Plaintiffs,

v.

Leslie **CAROTHERS**, Environmental Protection Department of Connecticut, Consolidated–Defendants–Appellees,

Arthur J. Rocque, Jr., Commissioner Environmental Protection, Lowell P. Weicker, Jr., Governor, Bruce L. Morris, CT Dept. of Public Works, Larry Meachum, Commissioner Official Capacity, CT Dept. of Corrections, State of Connecticut, John G. Rowland, Governor, Theodore R. Anson, Commissioner, John J. Armstrong, Commissioner, Defendants–Appellees.

Docket Nos. 98–7835, 98–9003.

United States Court of Appeals, Second Circuit.

Argued: April 9, 1999

Decided: Sept. 13, 1999

Ralph G. Burnette, Jr., and Marie G. Burnette, pro se, Somers, Connecticut, for Plaintiffs–Appellants.

Robert D. Snook, Assistant Attorney General (Richard Blumenthal, Attorney General of Connecticut, of counsel), Hartford, Connecticut, for Defendants–Appellees Lowell P. Weicker, Jr., Governor, Bruce L. Morris, CT Dept. of Public Works, Larry Meachum, Commissioner Official Capacity, CT Dept. of Corrections, State of Connecticut, John G. Rowland, Governor, Theodore R. Anson, Commissioner, John J. Armstrong, Commissioner.

Robert B. Teitelman, Assistant Attorney General (Richard Blumenthal, Attorney General of Connecticut, of counsel), Hartford, Connecticut, for Defendants–Appellees Leslie Carothers, Environmental Protection Department of Connecticut, and Arthur J. Rocque, Jr., Commissioner Environmental Protection.

Before: WINTER, Chief Judge, NEWMAN, and SOTOMAYOR, Circuit Judges.

WINTER, Chief Judge:

This is an appeal from the dismissal of a citizen enforcement action brought pursuant to the citizen suit provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9659, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986). Because we agree with the district court that the Eleventh Amendment bars the relief sought by the citizen suit and the action for recovery of response costs, we affirm.[1]

---

1. Throughout this opinion we refer to "Eleventh Amendment" state sovereign immunity. However, we recognize that this "phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by

Appellants, Marie G. Burnette and Ralph G. Burnette, Jr., appearing *pro se,* are homeowners in the Rye Hill section of Somers, Connecticut. They filed this action against various state officers in their official capacities, claiming that hazardous substances had emanated, and continued to emanate, from the Connecticut Correctional Institute ("CCI"), a prison located north of Rye Hill and operated by the Connecticut Department of Corrections. Appellants alleged that these toxic substances had polluted and were continuing to pollute their on-site water wells. They sought injunctive and monetary relief.[2] In addition, they sought reimbursement from defendants for response costs which were alleged to have been incurred as a result of "a release or threatened release of hazardous substances" from CCI. *See* 42 U.S.C. § 9607(a)(4)(B). The complaint also included claims under CERCLA for a declaratory judgment, future response costs, and contribution, pursuant to 42 U.S.C. § 9613(f)(1).

Arguing that the case was barred by the Eleventh Amendment, appellees moved to dismiss for lack of subject matter jurisdiction. They also moved for summary judgment on the claim for response costs, arguing that the Eleventh Amendment prohibited recovery of monetary damages. The district court dismissed all claims, holding that the State and its agents were immune from suit under the Eleventh Amendment. In addition, the court granted appellees' motion for summary judgment, holding that appellants were not entitled to response

costs from the State or to potential contribution costs because such recovery would violate the State's sovereign immunity. This appeal followed.

## DISCUSSION

### a) *Citizen Suit*

■ We review *de novo* a dismissal pursuant to Fed.R.Civ.P. 12(c). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *See id.* We may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In dismissing the action, the district court held that Congress did not, by authorizing environmental citizen suits, intend to abrogate the states' sovereign immunity. It also concluded that the State of Connecticut did not waive its sovereign immunity as to plaintiffs' CWA, RCRA, and CERCLA claims. We agree.

■ The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

---

the terms of the Eleventh Amendment." *Alden v. Maine,* — U.S. —, —, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999).

**2.** Sometime in 1993, water samples from wells in the Rye Hill area were found to contain certain chemicals in excess of standards for safe drinking water set by the State of Connecticut and the United States. The hazardous substances were found to be flowing from CCI, apparently as a result of previous disposal practices. Upon discovering the contamination, Connecticut officials immedi-

ately caused special filters to be installed in homes with high levels of the chemicals. The Department of Environmental Protection also began providing bottled water to the affected residents. A public water system was subsequently extended into the Rye Hill area, although not all of the homeowners chose to connect to it. The Department of Corrections, pursuant to a consent decree it entered into with the Department of Environmental Protection, ceased maintaining the filters after the public water system became operational.

State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). State immunity extends to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Thus, when the state is the real party in interest, the Eleventh Amendment generally bars federal court jurisdiction over an action against a state official acting in his or her official capacity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[3]

█ In certain circumstances, however, Congress may abrogate the states' constitutionally secured immunity from suit in federal court. To do so, Congress must make " 'its intention unmistakably clear in the language of the statute.' " *Dellmuth v. Muth*, 491 U.S. 223, 228, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must *do so specifically*." *Atascadero*, 473 U.S. at 246, 105 S.Ct. 3142.

█ The CWA, RCRA, and CERCLA contain substantially identical provisions permitting citizens to sue as private attorneys general in circumstances where government authorities have, after notice, failed to take steps to remedy particular environmental harms. These provisions state that "any citizen may commence a civil action on his own behalf—(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency *to the extent permitted by the eleventh amendment to the Constitution* ) who is alleged to be in violation of [the Act]." 33 U.S.C. § 1365(a)(1) (emphasis added); *see also* 42 U.S.C. § 6972; 42 U.S.C. § 9659. These provisions do not unequivocally express Congress's intent to abrogate sovereign immunity and subject states to suit. Far from evidencing a Congressional intent to do away with sovereign immunity, these provisions are expressly limited by the Eleventh Amendment. *See Natural Resources Defense Council v. California Dep't of Transp.*, 96 F.3d 420, 423 (9th Cir.1996) (district court properly dismissed all claims under CWA against state agency on Eleventh Amendment immunity ground); *Froebel v. Meyer*, 13 F.Supp.2d 843, 849–50 (E.D.Wis.1998) ("[T]he plainest meaning" of language in CWA is that "the Eleventh Amendment retains some presumptive force . . . ."); *Rowlands v. Pointe Mouillee Shooting Club*, 959 F.Supp. 422, 426 (E.D.Mich.1997) (RCRA citizen suit provision operates within the Eleventh Amendment), *aff'd*, 182 F.3d 918 (6th Cir. 1999). The district court was, therefore, correct in holding that these citizen suit provisions do not abrogate Connecticut's sovereign immunity and that the state defendants are therefore entitled to immunity from suit in federal court.

█ Appellants assert, however, that even if a citizen suit would ordinarily be barred under the Eleventh Amendment, immunity does not apply here because the complaint is in the nature of a *qui tam* action and the United States is the real party in interest. We disagree. In *Con-*

---

**3.** An important exception to this general rule is set forth in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which holds that the Eleventh Amendment does not bar suits seeking prospective relief against state officials acting in violation of federal law because such action is not considered an action of the state.

*necticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81 (2d Cir.1972), we held that "there is no common law right to maintain a *qui tam* action; authority must always be found in legislation.... [T]he terms and structure of the particular statute are decisive." *Id.* at 84. The statutes at issue do not grant citizens the right to sue on behalf of the United States nor do they establish a formula for recovering civil penalties. To the contrary, the citizen suit provisions authorize "any citizen [to] commence a civil action on his *own* behalf." 33 U.S.C. § 1365(a) (emphasis added); *see also* 42 U.S.C. § 6972; 42 U.S.C. § 9659. The United States is not, therefore, the real party in interest here.

■■■ Appellants suggest on appeal that some of their claims remain viable because they fit within the exception to Eleventh Amendment immunity established by *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (holding that suits against state officers, rather than against State itself, are permitted when seeking prospective relief). *See* Note 3, *supra.* However, appellants failed to raise this issue in the district court, even though they were then represented by counsel. Perceiving that no miscarriage of justice will result, we hold that their claim under *Ex Parte Young* has been waived. *See Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (noting that federal appellate courts may resolve issues not passed on below where injustice might otherwise result).

b) *Recovery of Response Costs*

Appellants next claim that they incurred costs in responding to the release of hazardous wastes from CCI and are therefore entitled to reimbursement from the State pursuant to 42 U.S.C. § 9607(a). Appellants also seek a declaratory judgment for future response costs and contribution pursuant to 42 U.S.C. § 9613(f)(1).

We review the district court's grant of summary judgment *de novo. See Young v. County of Fulton*, 160 F.3d 899, 902 (2d

Cir.1998). In doing so, we construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir.1998).

■■■ As an initial matter, claims made pursuant to CERCLA Section 113(f), 42 U.S.C. § 9613(f), are available only to a potentially responsible party seeking to recover from another potentially responsible party. *See Bedford Affiliates v. Sills*, 156 F.3d 416, 423–25 (2d Cir.1998) (discussing differences between claims for recovery under 42 U.S.C. § 9607(a) and claims for contribution under 42 U.S.C. § 9613(f) and holding that a Section 9607(a) suit is not available to potentially responsible parties); H.R.Rep. No. 99–253(I), at 79 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2861 (principal goal in passing CERCLA Section 113 was to "clarif[y] and confirm[] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances"). Because appellants do not claim to be a potentially responsible party, recovery under Section 113(f) is not available to them.

■■■ We turn therefore to their remaining claim for response costs under CERCLA Section 107(a), 42 U.S.C. § 9607(a). In *Seminole Tribe v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court held that Congress may abrogate the states' sovereign immunity if two conditions are met: (i) Congress "unequivocally expresse[d] its intent to abrogate the immunity" and (ii) Congress acted "pursuant to a valid exercise of power." (alteration in original) (internal quotation marks omitted). In the instant case, the first requirement has been satisfied. In *Pennsylvania*

*v. Union Gas Co.,* the Supreme Court held that the provisions of CERCLA unmistakably express Congress's intent to divest the states of their Eleventh Amendment immunity. *See Union Gas,* 491 U.S. 1, 8, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), *overruled on other grounds by Seminole,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252. The sole remaining question is, therefore, whether Congress enacted CERCLA pursuant to a constitutional provision granting Congress the power to abrogate. We hold that it did not.

■ The Supreme Court in *Seminole* held that Congress could abrogate the states' Eleventh Amendment immunity only when acting under the power vested in it by Section 5 of the Fourteenth Amendment. *See* 517 U.S. at 59, 65–66, 116 S.Ct. 1114. CERCLA, however, was enacted pursuant to the Commerce Clause, and any provision in it that makes a state liable to private parties is accordingly unenforceable. *See Seminole,* 517 U.S. at 62, 116 S.Ct. 1114 (implicitly recognizing that CERCLA was enacted pursuant to Commerce Clause); *Union Gas,* 491 U.S. at 19–23, 109 S.Ct. 2273 (CERCLA enacted pursuant to Commerce Clause); *Ninth Avenue Remedial Group v. Allis–Chalmers Corp.,* 962 F.Supp. 131, 135 (N.D.Ind.1997) (holding that because Congress did not have power to abrogate immunity under Commerce Clause, unconsenting states are not liable to private parties under CERCLA); *United States v. Iron Mountain Mines, Inc.,* 952 F.Supp. 673, 675 (E.D.Cal.1996) (CERCLA passed pursuant to Commerce Clause and thus Congress lacked power to abrogate immunity); *Prisco v. New York,* No. 91 Civ. 3990, 1996 WL 596546, at *12–*14 (S.D.N.Y. Oct.16, 1996) (CERCLA claims dismissed because sovereign immunity could not be abrogated without action pursuant to Fourteenth Amendment or state waiver and neither was present).

Appellants contend that CERCLA was also enacted pursuant to Congress's spending power under Article I, Section 8, Clause 1. Even if this were the case, however, Congress would still lack the power to abrogate the states' immunity. "[A]fter *Seminole,* Congress cannot abrogate the States' Eleventh Amendment sovereign immunity pursuant to any Article I power." *Close v. New York,* 125 F.3d 31, 38 (2d Cir.1997); *see also Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* — U.S. —, —, 119 S.Ct. 2199, 2205, 144 L.Ed.2d 575 (1999) ("*Seminole Tribe* makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers . . . ."); *cf. Alden,* — U.S. at —, 119 S.Ct. at 2246 (holding that "the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts"). "[T]he only source of congressional abrogation stems from the Fourteenth amendment." *Close,* 125 F.3d at 38; *see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* — U.S. —, —, 119 S.Ct. 2219, 2224, 144 L.Ed.2d 605 (1999) (noting that Court has recognized individual suits against unconsenting states only when authorized by Congress's valid exercise of its Fourteenth Amendment enforcement power).

■ Alternatively, appellants maintain that by creating a claim for recovery of response costs, CERCLA created a property right and was therefore enacted pursuant to Congress's power under Section 5 of the Fourteenth Amendment. However, Congress's creation of a private claim for damages does not, without more, give rise to a legitimate claim of entitlement. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (finding that to have property interest, person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). To hold otherwise would eviscerate *Seminole.* Because we find that Congress's creation of CERCLA response-cost claims, standing alone, is insuf-

ficient to establish a cognizable property interest under the Fourteenth Amendment, we need not address "whether the prophylactic measure taken under purported authority of § 5 ... was genuinely necessary to prevent violation of the Fourteenth Amendment." *College Savings Bank,* —— U.S. at ——, 119 S.Ct. at 2225; *see generally City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

 Appellants also claim that although Connecticut did not expressly waive its Eleventh Amendment sovereign immunity, its actions may be construed as a constructive waiver. Relying on *Parden v. Terminal Ry.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), they contend that Connecticut consented to suit in federal court under CERCLA by engaging in an activity regulated by Congress, namely the operation of a prison from which toxic chemicals were released. *Parden,* however, has now been expressly overruled. *See College Savings Bank,* —— U.S. at ——, 119 S.Ct. at 2228. Because the law is now clear that a state cannot "constructively waive[]" its sovereign immunity in the manner alleged, *id.,* appellants' argument on this point fails.

 Appellants finally argue that Connecticut consented to suit under CERCLA through the acceptance of federal monies. However, "the mere receipt of federal funds cannot establish that a State has consented to suit in federal court." *Atascadero,* 473 U.S. at 246–47, 105 S.Ct. 3142. Here, Congress did not manifest a clear intention to condition the receipt of federal funds under CERCLA on a state's waiver of Eleventh Amendment immunity. The district court was, therefore, correct in finding that Connecticut did not consent to suit in federal court.

## CONCLUSION

We therefore affirm.