Ersin YAMAN,[1] Plaintiff,

v.

Louis S. D'ANGELO individually and in his capacity as an employee of the City of Rochester, Dan R. Magil individually and in his capacity as an employee of the City of Rochester, Thomas Rutherford individually and in his capacity as an employee of the City of Rochester, Officer Noble individually and in his capacity as an employee of the City of Rochester, and The City of Rochester, Defendants.

No. 01–CV–6543(CJS).

United States District Court, W.D. New York.

April 30, 2002.

---

1. During oral argument before the Court on April 11, 2002, counsel stipulated that the caption of the action should be amended to reflect that plaintiff's first name is Ersin, not Erisan, as had been indicated in the Complaint.

Nira T. Kermisch, Rochester, NY, for Plaintiff.

Linda S. Kingsley, City of Rochester, Rochester, NY, Paul D. MacAulay, Rochester, NY, for Defendants.

### DECISION AND ORDER

SIRAGUSA, District Judge.

This is an action pursuant to 42 U.S.C. § 1983, in which plaintiff claims that the individual defendant police officers, acting pursuant to policies of the City of Rochester, violated his constitutional rights by denying him a license to operate his retail jewelry business, without due process, and by subsequently forcing him, through a campaign of harassment, to close his business. He further alleges that Section 96 of the Rochester Municipal Code, which controls the issuance of licenses for the sale of used merchandise, is unconstitutionally vague and overbroad. Now before the Court is defendants' motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that the action is barred by the relevant statute of limitations, and plaintiff's cross-motion for an extension of time in which to serve the

complaint. For the reasons that follow, defendants' motion is granted in part and denied in part, and plaintiff's cross-motion is denied.

## BACKGROUND

In this action, plaintiff, Ersin Yaman, alleges that, between 1988 and 1999, he operated a retail jewelry store in the City of Rochester, known as "Ace of Diamonds," from which he sold both new and second-hand jewelry. Pursuant to the Rochester Municipal Code, any person engaged in the sale of second-hand jewelry, gold, or silver, is required to obtain a license, which must be renewed each year. (Rochester Municipal Code, § 96–3). Applications for such licenses are processed and reviewed by the City's Director of Zoning and the Chief of Police. (*Id.*, § 96–2). The Code further provides that

> the Chief of Police shall cause an inspection to be made of the applicant's business premises to determine whether public safety problems exist, and the Chief of Police shall cause an investigation to be made of the background of the owner and operator of the business. Before the issuance of a license, the Chief of Police and his representatives shall have the right to enter upon such premises during normal business hours for the purpose of making inspections.... The owner, operator and employees of any secondhand business shall be of good moral character.... The Chief of Police may promulgate rules and regulations to govern the operation of secondhand businesses....

(*Id.*, § 96–2(B)–(D)). The Code further provides that the Chief of Police

> may deny a license or deny the renewal of a license to any applicant who is not of good moral character, who is not a fit and proper person to hold a license issued under this chapter or who makes a material misrepresentation on the license application. The Chief of Police shall give the applicant written notification of the reasons for the denial of a license.... The Chief of Police shall have the power to investigate and inquire into license applicants under this chapter and to require and enforce by subpoena the attendance of witnesses at such investigations.

(*Id.*, § 96–9).

Plaintiff indicates that, until 1996, he had no difficulty obtaining such a license from the City of Rochester. However, he alleges that, beginning in 1996, "[d]efendants began creating problems for [him] in retaliation for an incident which occurred in May 1996." (Complaint, ¶ 8). More specifically, he states:

> Sometime in May 1996, Defendant [Officer] Rutherford came to Plaintiff's business and ordered the clerk to remove a car which was parked in front of the building next door, because allegedly it was parked illegally.... When the clerk informed Defendant Rutherford that he could not move the car because it was not his, [Rutherford] told the clerk that he would have to move his own car because the parking on the street was meant to be used by patrons of businesses in the area.... The [c]lerk and the owner of the vehicle explained to ... Rutherford that because there were no driveways and no parking areas there was no choice but to park on the street, yet ... Rutherford threatened to tow the cars if they were not moved.... The cars were not moved, nor were they towed away, nor were they ticketed. However, after this incident, Defendants started to harass Plaintiff's clerk, business, and Plaintiff's customers.

(*Id.*, ¶¶ 9–12). Plaintiff alleges that, "a short time after" the incident described above, Officer Rutherford returned to the

store and asked to see plaintiff's license, and when he was unable to produce a license, Rutherford issued him three tickets for operating without a license. A short time later, plaintiff was issued additional tickets for dealing in second-hand jewelry without a license. Plaintiff indicates that he had applied for a license, but that the defendants delayed the processing of his application. Plaintiff eventually pled guilty to the charges, in exchange for the police department's promise that it would approve his application. Although plaintiff subsequently received a license, he claims that defendants continued to harass his customers, and further accused him of buying stolen jewelry, and that, "[t]his harassment continued into 1999." (*Id.*, ¶ 24).

Further, plaintiff alleges that on May 14, 1998, another officer came to his store, demanding to see his license. When plaintiff was again unable to produce a license, the officer issued him another ticket. Plaintiff eventually applied for a new license, however, the Chief of Police denied the application, on the grounds that he "was not of good moral character and was not a fit and proper person to hold a second hand dealer license." (*Id.*, ¶ 32). Subsequently, the Chief of Police also denied plaintiff's request for hearing.

As a result, plaintiff was forced to cease dealing in second hand jewelry, although he continued to buy and sell new jewelry. Nonetheless, he claims that defendants continued to harass him, by informing his wholesale suppliers that he was engaged in illegal activities. He further alleges that in October 1998, Officer Rutherford went to his store and told him that he could not have customers in his store, "even for appraisals, referrals, or sale of new jewelry." (*Id.*, ¶ 40). According to plaintiff, Ruther-

ford told him, "I live to put you out of business." (*Id.*, ¶ 41). Finally, he alleges that, some time "[a]fter July 1998," Rutherford went to plaintiff's store, and "forcibly removed a ring from Plaintiff's mother's finger alleging it was stolen." (*Id.*, ¶ 42).

On June 28, 2001, plaintiff commenced this action in New York State Supreme Court, Monroe County, by filing a summons with notice. Plaintiff served the defendants with the summons on October 23, 2001. On October 31, 2001, defendants served a demand for a complaint on plaintiff's counsel, pursuant to CPLR § 3012(b). On November 7, 2001, defendants removed the action to the United States District Court for the Western District of New York. On December 7, 2001, plaintiff served the complaint on defendants.

On January 2, 2002, defendants filed the subject motion to dismiss, on the grounds that plaintiff failed to serve the complaint within 20 days after their demand, as required by CPLR § 3012(b). (MacAulay Affidavit, ¶ 4). Defendants also contend that, although the complaint's second cause purports to state a cause of action for intentional and/or negligent infliction of emotional distress, as a matter of law, it fails to state a claim upon which relief can be granted. Further, defendants maintain that plaintiff's claims pursuant to 42 U.S.C. § 1983 are time-barred, under the applicable three-year statute of limitations, because "[t]he key allegations contained in the complaint relate to actions allegedly taken by the defendants on or before June 29, 1998." (*Id.*, ¶ 8). Finally, defendants contend that, although plaintiff claims that he could not appeal the denial of his license application, he did have such a right to appeal, in a proceeding pursuant to CPLR Article 78.[2]

**2.** During oral argument of the motion, the    Court also questioned whether or not plain-

In response to the motion, plaintiff denies that service of the complaint was untimely. In that regard, plaintiff's counsel indicates that, since defendants removed the action to federal court on November 7, 2001, Federal Rule of Civil Procedure 4(m) then provided her with 120 days to serve the Complaint. (Kermisch Answering Affirmation, ¶ 21)., In the alternative, plaintiff has cross-moved for an extension of time, nunc pro tunc, to file and serve the complaint.[3] Plaintiff further indicates that her second cause of action is not intended to state a claim for infliction of emotional distress, but instead, is intended to state a claim against the Rochester City Police Department "for the acts of the individual Defendants ... which Plaintiff alleges were done pursuant to policies, rules, and regulations of the City of Rochester." (*Id.*, ¶ 29). Finally, with regard to the statute of limitations, plaintiff indicates that the complaint is not intended to seek relief for actions which occurred more than three years before the action was commenced, and that the references to occurrences in 1996 were only to provide background information. (*Id.*, ¶ 39).

On April 11, 2002, counsel for the parties appeared before the undersigned for oral argument. The Court has thoroughly considered the parties' submissions and the arguments of counsel.

## ANALYSIS

It is well settled that in determining a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for "failure to state a claim upon which relief can be granted," a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert denied*, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations omitted) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**The alleged Procedural Due Process violation with regard to the second-hand dealer's license**

██ At the outset, the Court finds that, with regard to the claims involving the second-hand dealer's license, there was no due process violation, since the state provided adequate hearing procedures. In *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996), *cert dismissed*, 521 U.S. 1140, 118 S.Ct. 15, 138 L.Ed.2d 1048 (1997), the Second Circuit noted:

When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. In the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy. When the deprivation occurs

---

tiff's third cause of action, challenging the subject sections of the Rochester Municipal Code as being vague and overbroad, was sufficiently pled. However, since defendants have not moved for dismissal on that ground, the Court will not consider that issue in this Decision and Order.

**3.** The notice of motion is incorrectly captioned as a "Cross Notice of Motion for Summary Judgment."

in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.

(citations omitted). As to claims arising from random, unauthorized acts by state employees, the Court in *Hellenic* further noted that,

> [w]e have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation. Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners. A petitioner in an Article 78 proceeding is permitted to submit affidavits and other written proof of their claim, and where a triable issue of fact is raised, the petitioner may obtain a trial. Additionally, constitutional issues can be decided in Article 78 proceedings. An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit.

*Id.* at 881 (citations and internal quotations omitted).

■ On the other hand, where the alleged deprivation occurred as a result of established state procedures, the Court must

> follow the now familiar analysis set forth by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The *Mathews* analysis requires us to weigh: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

*New York State Nat. Org. for Women v. Pataki,* 261 F.3d 156, 167–68 (2d Cir.2001) (additional citations omitted), *cert denied,* —— U.S. ——, 122 S.Ct. 1066, 151 L.Ed.2d 969 (2002). In conducting this analysis, the Second Circuit has held that, as with situations involving random, unauthorized acts, the plaintiff's ability to pursue an Article 78 proceeding may provide him or her with all the process that is required. *Id.* at 168.

In the instant case, plaintiff alleges he was denied the second-hand dealer's license because the defendant police officers, seeking to retaliate against him for an argument which occurred in 1996, falsely accused him of criminal behavior. Therefore, the Court finds that the due process claims pertaining to the license application involve random, unauthorized acts by state employees. However, even if the Court were to find that the alleged deprivation arose from established state procedures, it is clear that, in either case, plaintiff could have pursued an Article 78 proceeding to challenge the denial of his application for the second-hand dealer's license. *See, Berger v. Leach,* 103 A.D.2d 1018, 478 N.Y.S.2d 395 (4th Dept.1984) (Involving an Article 78 Proceeding challenging the denial of a second-hand dealer's license under Section 96–9 of the Rochester Municipal Code). In such a proceeding, plaintiff could have obtained the relief he seeks, since he alleges that he was denied the license without any justification whatsoever.[4] *See, Id.* (Noting that a state court, in an Article 78 proceeding, will set aside a denial by the Chief of Police under Rochester Municipal Code

---

4. The Court further notes that, during oral

argument, defendants' counsel indicated,

§ 96–9, when "no valid ground exists for denial or when the determination was clearly arbitrary and capricious.") (citations omitted). Accordingly, the Court finds that plaintiff's due process claims pertaining to the second-hand dealer's license must be dismissed.[5]

■ However, the Court finds that plaintiff may, insofar as he alleges that defendants also denied him the right to sell new jewelry, pursue a claim that defendants' actions denied him the right to earn a living. *See, McGee v. Hester*, 724 F.2d 89, (8th Cir.1983) (Where the plaintiff's "business became the target of unlawful and unjustifiable [police] surveillance which interfered with and obstructed his ability and right to earn a living," the court held that, "[a]t some point, the methods of surveillance become so intrusive as to violate the [plaintiff's] clearly established property right."), *reh'g denied* Feb. 1, 1984; *see also, Rodrigues v. Village of Larchmont*, 608 F.Supp. 467, 474 (S.D.N.Y.1985) ("Unlawful and unjustifiable surveillance that interferes with and obstructs a person's ability and right to earn a living may establish a claim under Section 1983.") (*citing McGee v. Hester*).

### Three-year Statute of Limitations for 42 U.S.C. § 1983

■ The parties agree that plaintiff's Section 1983 claims are governed by a three-year statute of limitations. *See,*

*Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). Therefore, since plaintiff commenced this action on June 28, 2001, any claims for acts which occurred prior to June 28, 1998 would be time-barred. Despite this, plaintiff's complaint describes numerous acts allegedly committed by defendants in 1996. However, plaintiff apparently now concedes that those events are time-barred, since, in her Answering Affirmation, plaintiff's counsel states:

> The complaint alleges, in the first Cause of Action, violations of Plaintiff's civil rights for events which occurred from June 28, 1998 through October 1998.... The First Cause of Action is against the individual Defendants only.... The Second Cause of Action pertains to the liability of the City of Rochester for the acts of the individual Defendants ... as cited in the First Cause of Action....

(Answering Affirmation, ¶¶ 27–29). Accordingly, based upon plaintiff's counsel's sworn statement, the Court finds that plaintiff's claims in this action pertain only to events which allegedly occurred between June 28, 1998 and October 31, 1998. To the extent the complaint may appear to state claims outside that period, those claims are dismissed.[6]

### Defendants' motion to dismiss pursuant to CPLR § 3012

■ Defendants contend that the action should be dismissed, because plaintiff

---

without contradiction by plaintiff's counsel, that plaintiff had in fact commenced an Article 78 proceeding, but then, for unknown reasons, discontinued that action.

5. It is also questionable whether plaintiff had a property interest in obtaining the license, since, as plaintiff's counsel admitted during oral argument, the Rochester City Code grants the Chief of Police significant discretion in deciding whether or not to grant a second-hand dealer's license. *See, Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995), *cert denied*, 519 U.S. 808, 117

S.Ct. 50, 136 L.Ed.2d 14 (1996); *see also, Sanitation and Recycling Indus. v. City of New York*, 107 F.3d 985, 995 (2d Cir.1997). However, the Court does not here decide that issue, since defendants did not move for dismissal on that basis.

6. As noted above, the Complaint contained a statement that "harassment continued into 1999" (Complaint, ¶ 24), however, based upon plaintiff's counsel's affirmation, any claims for acts which occurred after October 31, 1998 are dismissed.

failed to comply with CPLR § 3012(b), which provides that the plaintiff must serve a complaint within twenty days after defendants' demand. The parties agree that, under New York law, the complaint was served eleven days late. However, plaintiff maintains that service of the complaint was nonetheless timely, pursuant to 28 U.S.C. § 1448, since, once the action was removed to federal court, Federal Rule of Civil Procedure 4(m) provided him with an additional 120 days to serve the complaint. In that regard, plaintiff has cited a case which is directly on point, *G.G.G. Pizza, Inc. v. Domino's Pizza, Inc.*, 67 F.Supp.2d 99, 102 (E.D.N.Y.1999), which holds that the 120 day period described in Rule 4(m) begins to run at the time the action is removed to federal court. *See also,* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1137 (2002) ("In removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the action was originated in state court....") (citing *GGG Pizza, Inc.*). In any event, it is clear that, even applying CPLR § 3012(b), the complaint should not be dismissed merely because of an eleven-day delay. In *Lehigh Valley R.R. Co. v. North Am. Van Lines, Inc.*, 25 A.D.2d 923, 924, 270 N.Y.S.2d 83 (3rd Dept.1966), the Court wrote:

> Appellant urges ... that it was incumbent on respondent to serve an affidavit of merits and an excuse for the delay and also cross move to be relieved of the default. While there are cases which indicate such requirements are applicable with respect to CPLR 3012 (subd. [b]) ... in all of such cases the delay appears to be considerably longer than the 12 days in the present case. We find consistently the reference to "inordinate" or "prolonged" delays, and it is clear that the actual length of the delay, although not contained as a test in the

statute, is an overriding consideration and is at the root of the requirement that the plaintiff justify his case as well as his delay.... Here there is clearly no prejudice as a result of the 12-day delay in the service nor is the delay "inordinate" or "prolonged"....

(Citations omitted); *See also, Mills v. Niagara Mohawk Power Corp.*, 216 A.D.2d 828, 829, 628 N.Y.S.2d 857 (3rd Dept.1995) ("[B]ecause the delay was relatively brief (approximately six days) and there is no evidence that defendant was prejudiced by this initial delay, plaintiff was not required to tender an excuse for the delay nor establish a meritorious cause of action to avoid dismissal under CPLR 3012(b)") (citations omitted). During oral argument, defendants' counsel conceded that eleven days is not an inordinate delay, and further, defendants do not claim any prejudice as a result of the delay. Accordingly, the motion to dismiss for failure to timely serve the complaint is denied.

### Plaintiff's Second Cause of Action

As to this cause of action, defendants' memorandum of law states that, "[a]lthough it is not entirely clear what cause of action is being alleged, it appears that the plaintiff is pleading both intentional and or negligent infliction of emotional distress as a cause of action," and defendants then argue that the cause of action does not state a claim, and in any event would be time barred. (Defendants' Memo, pp. 3–4). However, plaintiff indicates that the second cause of action is only intended to state a cause of action for municipal liability pursuant to 42 U.S.C. § 1983. In other words, plaintiff contends that the City of Rochester is liable for the alleged acts of the defendant police officers, committed between June 28, 1998 and October 31, 1998, which deprived him of the right to earn a living, since the officers allegedly

acted pursuant to "policies, rules, and regulations of the City of Rochester." (Kermisch Answering Affirmation, ¶ 29). Accordingly, since plaintiff has clarified that he is not asserting a claim for intentional or negligent infliction of emotional distress, defendants' motion to dismiss the second cause of action is denied.

## CONCLUSION

For all of the foregoing reasons, defendants' motion [# 4] is granted in part and denied in part. Plaintiff's cause of action alleging a procedural due process violation in connection with the second-hand dealer's license is hereby dismissed, as are any claims for alleged constitutional violations which occurred prior to June 28, 1998, or after October 31, 1998. Defendants' motion is denied in all other respects. Plaintiff's cross-motion [# 9] is denied. Further, the Clerk of the Court is directed to amend the caption of this action to reflect that plaintiff's name is spelled Ersin Yaman.

So ordered.